# NOVEMBER, 1932

MONKEY GRIP RUBBER COMPANY V. O. R. WALTON.

No. 5917. Decided November 9, 1932.
(53 S. W., 2d Series, 770.)

*Paddock, Massingill, Belew & Todd* and *Homer Hill,* all of Fort Worth, for appellant.

On the question that the jury before answering the special issues submitted to it decided in whose favor the verdict should be rendered is misconduct. Conlisk v. Bender, 245 S. W., 941; Harvey v. Gulf, C. & S. F. Ry. Co., 261 S. W., 197; Southern Traction Co. v. Wilson, 254 S. W., 1104.

*Willis M. McGregor,* of Fort Worth, for appellee.

It is not misconduct for the jury to first decide which party they thought entitled to the verdict and then take up the special issues and decide them one by one, according to the evidence received on the trial. Simmonds v. St. Louis, L. B. & M. Ry. Co., 18 S. W. (2d) 845; Parks v. Missouri, K. & T. Ry. Co., 19 S. W. (2d) 373; Casstevens v. Texas & P. Ry. Co., 28 S. W. (2d) 288; Texas Emp. Ins. Assn. v. Chocolate Shop, 30 S. W. (2d) 416.

MR. JUDGE LEDDY delivered the opinion of the Commission of Appeals, Section B.

The Court of Civil Appeals for the Second Supreme Judicial District submits the following statement and question:

"The Monkey Grip Rubber Company has appealed from a judgment rendered against it in favor of O. R. Walton for the sum of $185.00 as damages to plaintiff's automobile resulting from a collision with defendant's truck at a crossing of two public streets in the City of Fort Worth; the truck being driven by Joe Hugley, a negro employe of the defendant company, and plaintiff's car being driven by himself.

"The judgment was based on findings of the jury that the collision was not an unavoidable accident but was proximately caused by the negligence of the driver of the truck in several particulars, including the failure to keep a proper lookout for other vehicles under like circumstances; failure to sound his horn; in operating the truck at a high rate of speed; failure to use ordinary care; changing the course of the truck without first seeing that he had sufficient space so to do without injury to the plaintiff's car; operating the truck with defective brakes;

failure to have the truck under control; and failure to use ordinary care to avoid collision after discovering the peril of plaintiff and his car. There were further findings by the jury exonerating the plaintiff of the charge of contributory negligence in several particulars. The evidence introduced on the trial, as shown in the statement of facts, was ample to support all the jury's findings.

"We believe it clear that all assignments of error should be overruled except the one in which complaint is made of misconduct of the jury. To support the contentions of misconduct, only one juror was offered as a witness upon the hearing of the motion for new trial, and the following is his entire testimony:

" 'My name is E. A. Turner. I am engaged in the printing business. I was one of the jurors elected in case No. 28870, the style of the case, O. R. Walton v. Monkey Grip Rubber Company, which was tried in this court about three weeks ago. When the jury retired to the jury room to consider their verdict I was elected foreman of the jury. The first thing that I did after I went into the jury room, I suggested that the jury elect some one else to be foreman. The first business that we disposed of was to elect a foreman. When I was elected foreman the thing I did next was to tell them to make a vote on who they favored. I asked them to indicate whether or not they favored the plaintiff or the defendant. They did indicate whom they favored. They just all agreed that it was the other party's verdict and they didn't say anything about the negro in there. They didn't say anything about the negro in there; they just all agreed that it was all for the plaintiff, is all. The plaintiff was the one the judgment was to be given to; all agreed that it was the negro's fault. And they all agreed that they would give a judgment to Mr. Walton.

" 'It is very difficult for me to remember at this time what everybody said, but I will stretch my memory and do my best to tell the substance of what every juror said, give the substance as well as I can remember; we just decided on who we was going to be in favor of. I read the questions at least three times; read the questions out loud to the rest of them; I say now that we first decided who we would be in favor of; then I read the questions over to them and probably discussed the questions as we came to them. When we would discuss one then we would go on to the next one and discuss that. I know that I read the questions at least three times. I don't hardly get the questions you ask me of when we answered these ques-

tions for me to tell the Judge whether or not I considered what effect that answer would have on the case, that is, say whether or not we would give plaintiff judgment or the defendant judgment; in other words, when we came to this first question, was the collision an unavoidable accident, our answer was "No," and whether or not when we put that answer "no," down whether we considered whether that would effect the plaintiff's rights; I don't hardly get that. Yes, in putting down these answers we did take into consideration what effect that answer was going to have on the case. Now, if we had felt to answer that question "yes" would have meant that Mr. Walton could not have gotten anything I don't think that would have had any effect on us putting down that question "no." There was a little discussion in there about insurance—that was brought up something about insurance, but we tried to be fair.

" 'In answer to question number two, the question is as to whether or not that negro kept a proper lookout. Now we answered that question "No," that he didn't keep the proper lookout. I remember when the discussion took place with reference to that. After we figured out some time late in the evening, he was in a hurry to get back; I think he quit at five o'clock and he had to sweep the place out and we took into consideration that he was in an awful hurry to get back; that kind of a discussion. I don't think at that time we took into consideration the fact that if we had answered that question the other way that Mr. Walton would not get a judgment.

Cross examination by Mr. McGregor.

" 'When we all went in there and I was chosen to act as foreman and that proposition was decided upon we all knew that the main issue for us to decide in the case in a general way was whose fault caused the accident, Mr. Walton's or the negro's. I felt that that was the logical thing for them to decide first. Now we didn't take a vote on the question of whether or not we would find for the plaintiff or the defendant; we just decided in a general way there whose fault caused the accident, whether it was Mr. Walton's or the pegro's, that is right. We did not take a vote on the question of whether we were going to return a verdict for the plaintiff or for the defendant; we discussed who we were really in favor of. And then after we had done that I read over these questions to the jurors three different times.

" 'You asked me if the jury didn't take up each separately and answer each one separately, and that you understand my testimony to be that I didn't pay any attention as to whether

or not it would result in a judgment for Mr. Walton or the defendant the way we answered any question, well, I will say of course, it is like I said when we first went in there we just took a vote on it. I mean in asking each question for instance —the first question we came to—the first question we had to answer was, "Was the collision in question an unavoidable accident as that term has been heretofore defined?" Now, in answering that question number one we didn't say we wanted to find for Mr. Walton and we didn't fix our answer in such a way as would result in a verdict for Mr. Walton. On the contrary, in doing that, in answering that question, we just simply thought about what the evidence was in the case and decided what the proper answer in the case of what the evidence showed it. We did that all the way through the best we could. We went over each question separately and answered each question separately just as we thought the evidence showed the answer to be; but some of the questions were hard to answer. That is true I did that all the way through.'

"Redirect examination by Mr. Crowley.

" 'The first vote we took was to decide who we were in favor of.'

"In view of the contradictory statements of that juror; the opinions by the Commission of Appeals in such cases as St. Louis, B. & M. Ry. Co. v. Cole, 14 S. W. (2d) 1024; Bradshaw v. Abrams, 24 S. W. (2d) 372, to the effect that the presumed findings by the trial judge on conflicting testimony of the jurors that alleged misconduct of the jury did not occur is binding upon the appellate courts; and the decision of your Honorable Court in Casstevens v. Texas & P. Ry. Co., 119 Texas, 456, 32 S. W. (2d) 637, opinion by Justice Greenwood, in substance, that if misconduct of the jury is disclosed a reversal will follow unless the facts negative beyond a reasonable doubt that it influenced any juror in assenting to the verdict; and since it occurs to us that the test of such reasonable doubt, logically, should be applicable also upon the issue of whether or not misconduct occurred, if it appears from the testimony of some juror to misconduct that at all events he believed in its truth and acted upon that belief, and that the same probably influenced his verdict, even though his testimony and that of others to the same effect is rejected by the trial judge as false; and in view of the importance of the question, the like of which may arise in other cases, and the growing frequency of assignments of error in the appellate courts based upon alleged misconduct of juries, we deem it advisable to certify for determination by

your Honorable Court, whether or not the assignment of error in the case now before us, presenting the question of misconduct of the jury based on the testimony of the foreman, E. A. Turner, set out above, should be sustained or overruled."

■ When a case is submitted on special isues it is the duty of the jury to answer each special issue as the facts justify without regard to the effect of such finding upon the judgment to be thereafter rendered in the cause. Simmonds v. St. Louis B. & M. Ry. Co., 29 S. W. (2d) 989 (Com. App.); G. C. & S. F. Ry. Co. v. Harvey, 276 S. W., 895 (Com. App.) (motion for rehearing overruled, 278 S. W., 839); Coons v. Culp, 278 S. W., 914 (Civ. App.).

■ It is such misconduct as will require a reversal if it be shown that a jury has agreed, in advance of answering the issues submitted, in whose favor the verdict should be and thereafter attempts to answer the question submitted with a view of bringing about such result. Bradshaw v. Abrams, 24 S. W. (2d) 372 (Com. App.).

■ However, the mere agreement by members of a jury during their deliberation as to which party they think is entitled to a verdict is not alone sufficient to constitute reversible error. It must also be shown that the jury has deliberately attempted to make the same effective by framing the answers to the issues submitted in such a way as to accomplish the desired result.

■ Bearing in mind the rule as to misconduct of this nature, can we say that the trial court committed error in overruling appellant's motion for a new trial on account of the alleged misconduct of the jury while deliberating upon its verdict? We think this question must be answered in the negative. The testimony of the foreman of the jury given upon direct examination, if standing alone, was such as to require the granting of the motion for new trial. He testified that the first thing the jury did after electing a foreman was to take a vote as to whether the members of the jury favored the plaintiff or the defendant, and that they agreed that it was the plaintiff's verdict. He further stated on such examination that some of the material issues submitted for the jury's consideration were answered with the view of giving the plaintiff a verdict. Upon this point he testified:

"Yes, in putting down these answers we did take into consideration what effect that answer was going to have on the case."

This statement was somewhat modified on further direct examination, in which he said:

"Now, if we had felt to answer that question (unavoidable accident) 'Yes' would have meant that Mr. Walton could not have got anything, I don't think that would have had any effect on us putting it down 'No.'"

The testimony of this juror on cross examination, however, is in direct conflict with his testimony on direct examination on each of the material points upon which he was called to testify. With reference to the agreement of the jury as to who should recover he testified on cross examination as follows:

"Now, we did not take a vote on the question of whether or not we would find for the plaintiff or the defendant; we just decided in a general way whose fault caused the accident, whether it was Mr. Walton's or the negro's, that is right. We did not take a vote on the question of whether we were going to return a verdict for the plaintiff or the defendant."

Of course there was nothing improper in the jurors' discussing whose fault caused the accident, as this issue was specifically submitted for their determination. The jury was required under the issues submitted to answer whether the collision of the automobiles was due to the negligence of the negro driving one car or the contributory negligence of the plaintiff in driving the other.

The juror's testimony on cross examination as to whether the jury attempted to answer the special issues submitted with a view of bringing about a verdict for the plaintiff is also directly at variance with his testimony on direct examination. Upon this point he testified:

"Now, in answering that question No. 1 (unavoidable accident) we did not say we wanted to find for Mr. Walton, and we did not fix our answer in such a way as would result in a verdict for Mr. Walton. On the contrary, in doing that, in answering that question, we simply thought about what the evidence was in the case and decided what the proper answer in the case of what the evidence showed it. We did that all the way through the best we could. We went over each question separately and answered each question separately just as we thought the evidence showed the answer to be; but some of the questions were hard to answer. That is true, I did that all the way through."

When a trial court hears the testimony of the jurors on an issue of misconduct, alleged to have occurred during the jury's deliberation upon its verdict, he is accorded the same latitude

in passing upon the credibility of the witnesses and of the weight to be given to their testimony as the jury had upon the trial of the original cause. If there be any inconsistencies or contradictions in the testimony of a witness upon the hearing of a motion for new trial, it rests within the sound discretion of the trial court to harmonize and reconcile such conflicts so far as possible. A juror's testimony upon such hearing may be so contradictory and inconsistent that the trial court in exercising its privilege to pass upon the credibility of the witness may be justified in disregarding his entire testimony. Carl Construction Co. v. Bain, 235 Ky., 833, 32 S. W. (2d) 414.

■ After hearing the testimony of the foreman of the jury as to what occurred during the jury's deliberation, the trial court overruled appellant's motion for a new trial. It is the duty of the Court of Civil Appeals to presume in support of that ruling, that the trial court, in passing upon the foreman's testimony, gave the same the most favorable construction of which it was susceptible, that no such misconduct occurred.

The testimony of the foreman upon cross examination showed clearly that the misconduct alleged did not in fact occur. The trial court was fully authorized, in the exercise of its privilege in weighing the testimony adduced before it on the hearing of a motion for a new trial, to accept the version given by the witness on cross examination as to what occurred in the jury's deliberation. Furthermore, the trial court was justified, if it saw fit to do so, in disregarding the testimony of the witness entirely because of the contradictory and inconsistent manner in which he testified concerning the issues before the court.

■ When the foreman of the jury, upon the hearing of the motion for new trial, so testified as to justify the trial court in disbelieving his entire testimony or to authorize it to find that his testimony did not show such misconduct as would require the granting of a new trial, appellant should have introduced other jurors and developed further testimony upon this issue. It did not, however, see fit to present any further witnesses upon the issue, but was content to rest a decision of the matter with the trial court, although it knew that the juror's testimony was fairly susceptible of a construction that the misconduct relied on had not occurred. Appellant therefore is in no position to complain that the trial court, in the exercise of the discretion vested in it, declined to grant a new trial because of the misconduct of the jury during its deliberation.

We recommend that the question certified be answered that the trial court did not err in refusing to grant appellant's motion for new trial because of the alleged misconduct of the jury.

The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.

C. M. Cureton, Chief Justice.