**MENEFEE et al. v. GULF, C. & S. F. RY. CO.**

No. 5615.

Court of Civil Appeals of Texas.   Amarillo.
May 15, 1944.

Rehearing Denied June 19, 1944.

Joe J. Fisher, of Jasper, and Adams, Hart & Daughtry, of Beaumont, for appellant Elton Menefee, et al.

Lightfoot, Robertson & Gano, of Fort Worth, for appellant Federal Underwriters.

Terry, Cavin & Mills, of Galveston, Harkrider, O'Brien & Pipkin, of Beaumont, T. Gilbert Adams, of Jasper, and Charles S. Pipkin, of Beaumont, for appellee.

PITTS, Chief Justice.

Appellants, Elton Menefee, a minor, suing through his father, Floyd B. Menefee, as his next friend, and Floyd B. Menefee suing in his own behalf, filed suit against appellee, Gulf, Colorado & Santa Fe Railway Company, for damages in the sum of $60,000 as a result of personal injuries sustained by Elton Menefee when there was a collision on December 20, 1941, between a truck he was driving for McDonald Lumber Company and a motorcar train owned and operated by appellee at an intersection of a public road and the railroad near a flag station in Newton County.

At the time of the collision and injuries Elton Menefee was employed by McDonald Lumber Company as a log hauler and his employer was a subscriber under the Workmen's Compensation Law, Vernon's Ann. Civ.St. art. 8306 et seq., of which subscriber Federal Underwriters Exchange was the insurance carrier. Prior to the trial of the case appellant, Federal Under-

writers Exchange, intervened in this suit, adopted all of the pleadings of the appellants, Elton Menefee and Floyd B. Menefee and sought to enforce its subrogation rights in the sum of $4,957.20, which it had previously paid appellants, Elton Menefee and Floyd B. Menefee, in a compromise suit between said appellants and this intervenor as workman's compensation as a result of the injuries sustained by Elton Menefee. Intervenor sought further an additional recovery of $1500 which it alleged would probably be asserted against it as additional doctors' bills and an attorneys' fee in the sum of $1000, all of which intervenor sought to recover out of the first moneys awarded Elton Menefee and Floyd Menefee by any judgment in their favor.

Appellants, Elton Menefee and Floyd B. Menefee likewise prayed that intervenor have judgment against appellee and against them by way of subrogation in the sum of $4,957.20, together with any other sums intervenor may show itself entitled to, out of any judgment awarded to the said appellants.

Appellants, Elton Menefee and Floyd Menefee and Federal Underwriters Exchange, alleged that the collision occurred at a public road crossing and that the injuries were sustained by Elton Menefee because of the negligence of appellee in that its agents operated the train at a dangerous and excessive rate of speed, failed to keep a proper lookout for travelers at the crossing, failed to keep proper control of the train and failed to ring the bell and sound the whistle as the law requires at an intersection of a public road and a railroad track.

Appellee answered with a plea in abatement, numerous exceptions, a general denial, unavoidable accident and charged that Elton Menefee was guilty of negligence which was the proximate cause of his injuries in that he failed to keep a proper lookout for appellee's motor train as he approached and attempted to cross the tracks ahead of the train, he failed to have his truck under proper control, he failed to have adequate brakes on the truck, he failed to look for and observe the approaching train, he failed to heed the warning signals given by the train, he failed to turn his truck to the right and off the road as the train approached and he was driving at an excessive rate of speed; that all of the said acts of Elton Menefee, separately and concurrently, were a proximate cause of his injuries and damages, or contributed to cause same.

The case was submitted to a jury on special issues which returned a verdict and found, in effect, that appellee's agents did not operate its train at a dangerous and excessive rate of speed; that they had the train under proper control, kept a proper lookout, gave reasonable notice with whistle at least 1320 feet from the crossing and repeated the whistle from time to time until the train had crossed over the crossing; that they did not ring the bell at 1320 feet from the crossing and did not continue ringing it as they approached the crossing but that such was not negligence and that they did ring the bell as the train passed over the road crossing; that the public road crossing had been there for thirty-five years and that such was known to agents of appellee; that Elton Menefee did not keep a proper lookout for appellee's motor train as he approached and attempted to cross the tracks ahead of the train; that Elton Menefee's failure to keep a proper lookout for appellee's motor train as he approached and attempted to cross the intersection ahead of the train was negligence and was a proximate cause of the collision and the injuries received by him and that Elton Menefee and Floyd Menefee were entitled to no damages by reason of the negligence of appellee. The jury further found that the truck Elton Menefee was driving had adequate brakes and that Elton Menefee applied the brakes; that he turned the truck sharply to the right and off of the road but that such was not negligence; that he was not driving at an excessive rate of speed; that he failed to heed the warning of the whistle as the train approached the crossing but that such was not negligence; that Elton failed to stop his truck before going on the track on which the train was approaching but that such was not negligence, and that Elton did not fail to look for appellee's motor train as the same approached the crossing where the injury occurred.

Appellee having been acquitted of any negligence that proximately caused the injury and appellant, Elton Menefee, having been convicted of negligence that proximately caused his injury, and nothing having been awarded appellants as a result of appellee's negligence, the trial court rendered judgment for appellee on the verdict of the jury. Appellants, the Menefees and

intervenor, filed motions for a new trial alleging, among other things, misconduct of the jury and attached the affidavits of two jurors to their motions. The trial court heard the motions and the evidence thereon, including the testimony of the two jurors whose affidavits were attached to the motions and overruled appellants' said motions, from which order overruling the motions appellants perfected an appeal to the Court of Civil Appeals of the Ninth Supreme Judicial District at Beaumont and the same was transferred to this court by the Supreme Court of Texas.

The Menefees and the intervenor insurance company joined hands in the trial of the case, in the hearing on their motions for a new trial and they have filed a joint brief on appeal. In the language of appellants in their brief, "the points upon which the appeal is predicated are based, for the most part, upon misconduct of the jury * * *."

Appellants complain of jury misconduct in points 1 to 11, inclusive, to the effect that during their deliberation the jury improperly discussed and considered the question of the presence of an insurance company, the question of attorneys' fee of intervenor's attorney in the case, the manner of operating air brakes on the train as explained by two jurors as a result of their own previous experiences and the statements of one juror who related his previous experience in another and different train wreck, and that all of such constituted original, extraneous evidence introduced by the jurors to the jury during their deliberation which affected their decisions upon material issues and resulted in the jury "originally believing one way but finally voting another way" and awarding "no damages" to Elton Menefee and his father, Floyd B. Menefee, although the jury recognized that Elton Menefee had been badly hurt and ruined for life.

The jury did not find that Elton Menefee and Floyd Menefee suffered "no damages" or were entitled to "no damages." The jury found that the Menefees were not entitled to any sum of money for the injuries sustained by Elton Menefee *as a proximate result of the negligence of appellee.*

The evidence heard by the trial court on appellants' motions for a new trial consisted mostly of the testimony of two jurors, Byerly and Bowers.

Byerly testified, in effect, that the presence of the insurance company was mentioned by the jury during its deliberation; that the jury discussed the fact that it appeared from the record that the insurance company would get about the first $5000, if any were allowed, and that it would break the railroad company before they could give the boy, Elton Menefee, anything; that some juror mentioned the fact that it seemed that the attorney for the insurance company was interested more in getting his fee than anything else; that jurors, Dickerson and Bowers, both said, "When you put on air brakes it locks the wheels and slides the ties and things up in front of them," and the witness said he thought Dickerson said he had had experience with air brakes; that one juror told about an experience he had once in getting his car stuck on the railroad track and it was hit by a train but he was not in the car when it was hit and that the juror said he believed it was just too bad for a fellow who got his car on the track and got hit by a train; that the jury talked the matter over and then answered the issues by ballot as they came to them according to the evidence and instructions of the court as nearly as they could.

The testimony of the witness, Bowers, who had served as a juror, was in substance about the same as that of the witness, Byerly. He testified that he had had some experience with air brakes but the record does not disclose that he attempted to tell of any of his experiences with the use of air brakes.

Rule 327, Texas Rules of Civil Procedure, provides that where the grounds of a motion for a new trial alleges misconduct of the jury the trial court shall hear evidence on the issue from the jurors or others and may grant a new trial if misconduct is proved, provided such misconduct be material and if it reasonably appears from the evidence, both on the motion and the main case, as well as from the record as a whole that injury probably resulted to the complaining parties.

It has been held in such cases (1) that the question of whether or not misconduct occurred is a question of fact, but whether or not misconduct, if found, resulted in injury to the complaining party is a question of law; (2) a juror may not preserve or destroy his verdict by testifying to the mental process by which he reached

the same; (3) the trial court is no longer required to grant a new trial if it has only a reasonable doubt as to whether or not misconduct affected the verdict; and (4) in determining whether or not the misconduct was material and probably resulted in injury to the complaining party the court must consider the whole record, including the pleadings and all evidence heard on the motion for a new trial and that heard on the main trial. Lackey et al. v. Moffett et ux., Tex.Civ.App., 172 S.W.2d 715; Akers v. Epperson et al., Tex.Sup., 171 S.W.2d 483; and Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462.

■ No findings of fact or conclusions of law were requested of the trial court as a result of the hearing on the motion for a new trial and for judgment overruling the same and none were filed. But when the trial court overrules a motion for a new trial after hearing all the evidence on the question of misconduct of the jury, it is the duty of the appellate courts, in the absence of an express finding to the contrary, to presume in support of that ruling, that the trial court in passing upon the evidence of the jurors, as witnesses, gave the same the most favorable construction of which it was susceptible and that no such misconduct occurred. Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770; Galveston, H. & S. A. Ry. Co. v. Waldo, Tex.Civ.App., 77 S.W.2d 326, and other authorities there cited.

■ There is no evidence that the jurors referred to any insurance company during their deliberation other than appellant, Federal Underwriters Exchange, which intervened in the suit and was a party thereto. The record discloses that appellants, Elton Menefee and Floyd Menefee, joined hands with the said insurance company in presenting to the jury, through their pleadings and the evidence, the subrogation rights of the insurance company. By agreed stipulation in the record it is shown that Elton Menefee had previously filed his claim for compensation as a result of his injuries with the Industrial Accident Board which made an award and he appealed and filed a suit against the Federal Underwriters Exchange in the District Court of Jefferson County in which suit a compromise judgment was entered for Elton Menefee against Federal Underwriters Exchange for $4,957.20. Appellants likewise claimed in the instant case a reasonable attorneys' fee for the intervenor insurance company and the record discloses that an agreed stipulation was made that $750 would be a reasonable attorneys' fee. Appellants jointly claimed and presented such claims to the jury and further claimed that intervenor insurance company would be entitled under its subrogation rights to receive about $5,000 out of the first moneys recovered by the Menefees and such claims were made to the jury without any limitation in the record or fixed by the court's charge advising the jury of the amount, if any, they might allow the Menefees over and above the $5,000.

It is our opinion that the jury was authorized, under the record, to discuss the presence of the insurance company, Federal Underwriters Exchange, and that they were authorized to mention, as the evidence shows they did, the attorneys' fee claimed for the intervenor by appellants. We have failed to find in appellant's motions for a new trial any misconduct of the jury alleged because one or more jurors said during the jury's deliberation ·that, "It would break the railroad company to give the boy anything after allowing $5,000 to the insurance company," however, we believe, under the evidence and the whole record in the instant case, that any statement made by one or more jurors during their deliberation to the effect that the intervenor insurance company would get about the first $5,000 allowed and that it would break the railroad company to give the injured boy anything merely reflected and involved nothing more than the mental processes of the jury in attempting to arrive at a just verdict.

■ Whether or not the trial court found misconduct of the jury as a matter of fact, we are concerned with whether or not the acts in question were material to the rights of the parties and whether or not it reasonably appears that injuries probably resulted to the appellants by reason of any improper discussion the jury may have had. It does not appear to us that the two jurors who expressed opinions about the use of air brakes were holding themselves out as experts in such matters and it does not appear that they related any of their experiences in such matters even though they may have expressed their views from previous experiences. Under the present rule, the burden of proof is upon appellants to prove that misconduct occurred and that such misconduct probably resulted in injury to them. City of

Houston v. Quinones, Tex.Sup., 177 S.W.2d 259. It has not been shown that the statements made by the two jurors about operating air brakes were material to any issue in the case, and it certainly does not appear to us that injury probably resulted to appellants because of any such statements made by the said two jurors about the operation of air brakes when we view the evidence before the trial court and the record as a whole. The same thing may be said concerning the experience the juror related about his car having been hit by a train when it got stuck on the railroad track. It does not appear that such juror tried to influence the jury nor that he did influence them by relating his experience. We can see no relation between the alleged misconduct and the jury finding that convicted Elton Menefee of negligence which proximately caused his injuries. These findings justify the judgment of the trial court and would have justified the same even if the jury had found appellee guilty of negligence.

It appears to us that much of the testimony heard by the trial court on the motion for a new trial was without probative force in that it related to the mental processes of the jury while attempting to arrive at decisions upon the issues presented and there was no proof of any overt acts by any juror. We believe the evidence does not show jury misconduct as a matter of law under the rules of the authorities relied upon. Tumlinson v. San Antonio Brewing Ass'n, Tex.Civ.App., 170 S.W.2d 620; Sproles Motor Freight Lines v. Long, 140 Tex. 494, 168 S.W.2d 642; Barrington v. Duncan, supra, and City of Houston v. Quinones, supra.

█ It appears to us that the jury answered the issues from the evidence and under the court's charge, one by one, and after balloting on each issue. They acquitted the appellee of any negligence that proximately caused the injury of Elton Menefee and convicted the appellant, Elton Menefee, of negligence that proximately caused his injuries. The evidence was contradictory but there is ample evidence to support the findings of the jury and such is conclusive. It was not improper, therefore, for the jury to further find that the Menefees were not entitled to any sum of money for the injuries sustained by Elton Menefee as a proximate result of the negligence of appellee, although the jury recognized the fact that Elton Menefee had been badly hurt and ruined for life. We find nothing in the record to support appellants' claim that the jury "originally believed one way but finally voted another way," however, such may be possible and still be proper if the record supports their final verdict and no irregularities are shown.

We overrule appellants' points 1 to 11, both inclusive, complaining of jury misconduct.

█ Appellants complain in points 12 and 13 that during the deliberation of the jury some of the jurors sought to announce for the consideration of the jury new rules of law contrary to the law in the court's charge; that the said new rules announced that any loss sustained by a person who drove his car on the railroad track and could not get it off before a train arrived was his own loss as a result of his own hard luck and that since the insurance company in the instant case would get the first $5,000 it appeared that they could not give appellants anything, all of which was new and extraneous points of law that were discussed and considered by the jury during their deliberation and that such affected their decisions upon material issues.

We do not find from the record that any jurors sought to make any pronouncements of new rules of law as complained of by appellants and their points 12 and 13 are therefore overruled.

█ Appellants complain in points 14, 15 and 16 that the jury was influenced by passion, prejudice or improper motives in finding that appellee's train was not being operated at a dangerous rate of speed at the time and place of injury of Elton Menefee and that appellants were entitled to no damages as a result of said injuries and that the evidence did not support such findings of the jury.

We do not find from the record any evidence indicating that the jury was influenced by any passion, prejudice or improper motives in answering any of the special issues. The record does indicate that the jurors had much sympathy for Elton Menefee but felt they could not award him damages under the evidence. The juror, Bowers, while a witness on the hearing on the motion for a new trial, testified in response to a question propounded by the attorney for the intervenor on the question of allowing damages for Elton Menefee:

"Well, personal feelings, we figured he ought to have something, but we couldn't see the way under the evidence how we could give it to him."

We believe the evidence supports the findings of the jury and that the same are conclusive. Appellants' points 14, 15 and 16 are therefore overruled. Martin et al. v. City of Corsicana, Tex.Civ.App., 130 S.W.2d 405; Rogers v. Coca Cola Bottling Co., Tex.Civ.App., 156 S.W.2d 325; and Shell Oil Co. v. Dennison et al., Tex.Civ. App., 132 S.W.2d 609.

Appellants complain in points 17 and 18 of conflicting answers by the jury in that the jury found in answer to special issue No. 19 that appellee failed to continue the ringing of the bell until the road crossing in question was reached, while in special issue No. 51 the jury found that appellee did not fail to keep the bell ringing until the engine, or motorcar, passed the crossing, and in that the jury found in answer to special issue No. 74 that Elton Menefee failed to keep a proper lookout for the motorcar of appellee as he approached and attempted to cross the railroad track and found in issues Nos. 75 and 76 that such was negligence and a proximate cause of the collision and injuries, while the jury found in answer to special issue No. 97 that Elton Menefee did not fail to look for appellee's motorcar and train as the same approached the crossing where the injury occurred.

We do not find any conflict between the answers of the jury to issue No. 19 and issue No. 51. In issue No. 19 we find a compound question asking if appellee's agents began ringing the bell west of the crossing at such distance as to give reasonable notice to the public and continued to ring the same until the crossing was reached, and the jury found they did not. In issue No. 51 the jury was asked only if appellee's agents kept the bell ringing until their engine or motorcar crossed the road and the jury found they did. Certainly, the train operator could have had the bell ringing as the engine crossed the tracks without having begun as far back as issue No. 19 inquired about and kept it ringing as it approached the crossing. Both findings can be true without any conflict. The law provides that a reasonable, rather than a technical, construction should be given special issues. Texas Indemnity Ins. Co. v. Staggs et al., 134 Tex. 318, 134 S.W.2d

1026, and authorities there cited. The law further provides that it is the duty of the trial court to reconcile apparant conflicts in the jury's findings if it can be reasonably done. Shell Oil Co. v. Dennison, supra; Fort Worth & D. C. Ry. Co. v. Welch, Tex. Civ.App., 154 S.W.2d 896; Bragg et al. v. Hughes, Tex.Civ.App., 53 S.W.2d 151; and Texas Indemnity Ins. Co. v. Bridges, Tex. Civ.App., 52 S.W.2d 1075.

We do not find any conflict in the answers the jury gave to special issues Nos. 74 and 97. In special issue No. 74 the jury found that Elton Menefee did not keep a proper lookout for the approaching train as he approached the crossing and attempted to cross the tracks ahead of the train, while in special issue No. 97, the jury found that Elton Menefee did look for the train as it approached the crossing. The first question asked about keeping a proper lookout as *he* approached the crossing and the other issue asked if he looked for the train as *it* approached the crossing. The latter question does not ask if he saw the train but it asked if he looked for it. The jury found that he looked for the train as it approached but that he did not look properly for his own protection and they further found that his failure to look properly for his own protection was negligence which proximately caused his injury. Such finding would preclude his recovery under the law even though appellee may have been guilty of negligence. The same rules of law will apply in this claim of appellants as we cite above in their claim of conflict between issues 19 and 51.

Appellants' 17th and 18th points are therefore overruled.

Appellants complain in points 19, 20, 21 and 22 that although the jury found that appellee was not negligent in its failure to ring the bell as it approached the crossing in question at a public road as required by law, it did find that appellee failed to ring the bell at such place as required by law and appellants claim further that such failure was negligence as a matter of law irrespective of the jury's findings to the contrary and that it was error for the trial court to accept the incomplete verdict of the jury without having it find whether or not such negligence per se was a proximate cause of the injuries.

The jury found that appellee's agents blew the whistle 1320 feet (80 rods) from the crossing and continued to sound the

whistle from time to time until it crossed the public road. It found that the train operator did not ring the bell 1320 feet (80 rods) before reaching the crossing and they found further that the train operator failed to ring the bell at a point west of the crossing such as would give reasonable notice to the traveling public but the jury found that appellee's agents were not negligent in their failure to so ring the bell; it appears that they found no negligence because they further found that the train operator did have the bell ringing as the train crossed the road and they also found that Elton Menefee failed to heed the warning of the whistle but went onto the tracks ahead of the train after the whistle had been sounded as the law requires.

Appellants contend that the failure of the train operator to ring the bell 80 rods west of the crossing and to keep it ringing from that point until it crossed the road was negligence as a matter of law, regardless of the jury's answers to the contrary, and that the jury should have found whether or not such negligence per se was a proximate cause of the injury, which inquiry was propounded to them but not answered after they found no negligence by appellee. Since the jury found that the train operator did not begin ringing the bell 1320 feet from the crossing but was ringing it when the train crossed the road the record does not disclose when or where the train was when the operator began ringing the bell.

. Article 6371 of Vernon's Civil Statutes, and Article 1672 of the Penal Code, do require operators of a train *to blow the whistle and ring the bell* 80 rods from the crossing of a public road and to keep the bell ringing until the engine has crossed the road, and appellants pleaded negligence as a matter of law but they likewise pleaded common law negligence and the case was submitted to the jury under the rules of common law negligence, that is, each act of alleged negligence inquired about, including the ones about which appellants complain, was followed by an inquiry as to whether or not such was negligence and same was then followed by another inquiry on the question of proximate cause, the answer to which depending upon an affirmative answer to the previous question. The jury answered the questions with reference to ringing the bell as they did because such inquiries were submitted to them and such was done without any objections from appellants. Appellants had a right

to have the issues submitted as common law negligence and such was done. We therefore believe appellants should be bound by the findings of the jury on issues submitted to them without any objections under the rules of common law negligence.

However, there was ample testimony to support the findings of the jury that the whistle was sounded several times and that the bell was ringing as the engine crossed the road but Elton Menefee testified that he never heard either the bell or the whistle. It stands to reason that if he did not hear the whistle nor the bell as he approached the crossing, certainly, he would not have heard the bell sounded at 1320 feet further away from the crossing.

We believe a reasonable construction of the statutes above referred to applied to all the facts and circumstances in this case will not support the claims of appellants. Therefore, points 19, 20, 21 and 22 are overruled.

We have carefully examined all of the assignments of error and the record and do not find any reversible error. The judgment of the trial court is therefore affirmed.