Monroe CRAWFORD, Appellant,

v.

CONSOLIDATED UNDERWRITERS,
Appellee.

No. 6193.

Court of Civil Appeals of Texas.

Beaumont.

April 16, 1959.

Rehearing Denied May 6, 1959.

McDaniel, Hunt & Fairchild, Center, for appellant.

Ramey, Calhoun, Brelsford & Hull, Tyler, for appellee.

ANDERSON, Chief Justice.

Appellant, as plaintiff in the trial court, sued under the Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq. Upon a jury's findings in response to special issues, he was awarded judgment for $212.60. He moved for a new trial, charging jury misconduct. The motion was overruled and this appeal followed.

The jury received the case during the afternoon of a Tuesday. One of the special issues (No. 1), but only the one, was answered that day. It was answered in the negative. It inquired as to whether the plaintiff had sustained any total disability as a result of his injury. Failing to come to a speedy agreement upon the remaining special issues, the jurors dispersed for the

night. They resumed their deliberations the following morning but did not answer any more of the special issues until after nine o'clock that night. Once they began answering the issues, however, they answered all of them within a comparatively short time and returned their verdict into court the same night. They found, among other things, that the plaintiff had sustained partial disability as a result of his injury; that such partial disability began on April 15, 1956; that its duration was fifty-eight weeks; that the percentage or degree of such partial disability was "14.4%+". The plus sign in the jury's finding was evidently given effect in rendering judgment, because the amount of the award, exclusive of interest, was computed on the basis of $3.63 per week for fifty-eight weeks, whereas 14.4% of $25 is only $3.60. For total disability, the plaintiff would have been entitled to compensation at the maximum rate of $25 per week.

It is undisputed that before answering any of the special issues that were answered Wednesday night the jurors agreed upon the amount of money they wanted the plaintiff to receive. It is likewise undisputed that the agreement was brought about by flipping a coin. The jurors had become deadlocked over whether the amount was to be $1,250 or $1,450. To resolve the question, they agreed to flip a coin and to abide the result. A coin was flipped and it favored an award of $1,450. Shortly afterwards, the verdict was returned. Initially, according to appellant's representations, an unacceptable verdict was returned. The evidence does not establish with certainty that that occurred, but it does supply some slight basis for inferring as much, since one of the jurors testified, and none denied, that initially the plaintiff was found to have been "100%" partially disabled for fifty-eight weeks. The jurors were not permitted to testify, or at least none did, about the rationale of their answers to the special issues, but one or more of them did testify, and none denied, that, once $1,450 had been agreed

upon as the amount the jurors desired the plaintiff to receive, an effort was made to answer the issues in a manner that would entitle the plaintiff to judgment for that amount. That the jurors did so endeavor, and that their findings relative to the duration and the percentage or degree of the plaintiff's partial disability are directly attributable to that effort, is rendered rather certain by undisputed facts. It is logical to suppose, for example, that the jury was of the impression that upon their original findings—i. e., their findings that the plaintiff had been 100% partially disabled for fifty-eight weeks—the plaintiff would receive $25 per week for fifty-eight weeks, or a total of $1,450. And we think it can hardly be by mere coincidence that 14.4 (plus)%, or, to be more nearly accurate, 14.463%, of the amount the plaintiff would have been entitled to if he had been totally and permanently disabled, or of $10,025, turns out to be $1,450. We have no doubt, therefore, there being no other logical explanation for them, that the odd, and sometimes illogical, findings are accounted for by the jury's effort to award the plaintiff $1,450.

The jury's failure to alter its original finding relative to the duration of the plaintiff's disability, after having so radically changed its finding relative to the degree of disability, does not weigh heavily against the views just expressed. The failure may have been due to inadvertence or oversight, or it may have been due, and more likely was, to a belief on the part of the jurors that the need to deal with duration had been eliminated by their having utilized the maximum award authorized by law in computing the degree of disability. But, be that as it may, it is sufficiently clear that the period of disability was fixed at fifty-eight weeks in the first instance because of the jury's effort to award the specific sum of $1,450.

Appellant complains principally of the matters already mentioned, but there is one other which must also be noted. When the

jurors reassembled on Wednesday morning, one of their number commented to the effect that he had seen the plaintiff beside the highway as he himself came to court that morning and that the plaintiff appeared to have been getting about very well and not to have been in as bad condition as he had appeared to be in while in court the previous day.

 In agreeing to abide the result of the flip of a coin, and in subsequently following through on that agreement, the jury was guilty of flagrant misconduct. Instead of suffering injury as a result, however, the plaintiff benefited and is therefore in no position to complain of the incident. Rule 327, Texas Rules of Civil Procedure. It was highly improper, also, for the juror to place before his fellow-jurors his observations of Wednesday morning. Again, though, it does not appear that the plaintiff probably suffered injury as a result, and so the incident does not, in and of itself, require that the judgment be disturbed. Rule 327, supra. But the jury's conduct in first agreeing upon the amount of money they wanted the plaintiff to receive and in then deliberately endeavoring to answer the special issues in a manner that would entitle the plaintiff to judgment for that amount cannot be so lightly brushed aside. That it amounted to misconduct is believed to be established by the uniform decisions of our courts. See, as to the basic principles involved, Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770; Simmonds v. St. Louis, B. & M. Ry. Co., Tex.Com.App., 29 S.W.2d 989; Coons v. Culp, Tex.Civ. App., 278 S.W. 914. And we think it sufficiently appears that the plaintiff probably suffered injury as a result. Of course, we cannot say with certainty that a verdict more favorable to the plaintiff would have been returned if the jury had arrived at their answers in a legitimate manner, but there is good reason to suppose that such would probably have been the case.

Appellee contends that a different holding is called for by St. Paul-Mercury Indemnity Co. v. Bearfield, Tex.Civ.App., 296 S.W.2d 956, but we do not consider that case in point on the facts. The jury there only adopted a basis of rationalization, and nothing more was involved, apparently, than the mental processes by which the jury arrived at its verdict. Appellee also argues that the misconduct here involved was invited by appellant through his evidence and through the conduct of his counsel, but with this we cannot agree.

We overrule, without discussion, appellant's first and fifth points of error. The former is predicated upon the exclusion of certain undeveloped testimony during the hearing on the motion for new trial. The fifth point asserts that the verdict is too uncertain to support the judgment.

For the reason assigned, the judgment of the trial court is reversed and the cause is remanded for a new trial.