Effie Nellie DAWSON, Appellant,

v.

STATE of Texas et al., Appellees.

No. 16473.

Court of Civil Appeals of Texas.

Dallas.

April 23, 1965.

Rehearing Denied June 18, 1965.

Esir Tobolowsky, Dallas, for appellant.

Henry Wade, Dist. Atty., A. D. Jim Bowie, Jerome E. Dawkins and Don R. Stodghill, Asst. Dist. Attys., Dallas, for appellees.

BATEMAN, Justice.

Our former opinion is withdrawn and the following substituted therefor.

In this condemnation case the appellees State of Texas and County of Dallas condemned 6,700 square feet of a tract of 16,500 square feet owned by appellant Effie Nellie Dawson. The commissioners awarded $3,500 as damages, apportioned as follows: $3,407.36 to appellant, $67.51 to the City of Dallas and $25.13 to Dallas County. These amounts were paid into court and the $3,407.36 was withdrawn by appellant as authorized by Vernon's Ann.Civ.St. art. 3268. In the county court trial the jury found in response to special issues that: (1) the value of the land taken, considered as severed land, was $3,002; (2) the value of the remainder immediately before the condemnation was $8,498; and (3) the value of the remainder immediately after the condemnation was $11,500. Judgment was rendered on this verdict that appellees recover of appellant $498 (the excess of the commissioners' total award of $3,500 over the value found by the jury).

Appellant's first point of error on appeal is as follows:

"The court erred in not granting appellant a new trial because the jury was guilty of prejudicial, material misconduct in that the jury did not answer the three Special Issues submitted to it from the evidence, but on the contrary they first agreed upon the amount of money they wanted appellant to receive and then deliberately endeavored to answer the Special Issues in a manner that would entitle appellant to a judgment for that amount and no more, and injury probably resulted to the rights of appellant from said misconduct."

Four of the six jurors testified on the hearing of the motion for new trial, three of them to the effect that before answering any of the special issues the jury reached the conclusion that appellant's entire property was worth $11,500 before condemnation, that the remaining 9,800 square feet had increased in value as a result of the condemnation and was then worth $8,498, and that appellant, having owned property worth $11,500 before condemnation and property worth only $8,498 after condemnation, had suffered a net loss or damage consisting of the difference, or $3,002, which

amount they wrote in as their answer to Special Issue No. 1.

■ This of course was a completely unauthorized and improper method and completely disregards the court's instructions and the wording of the special issues. It has the effect of offsetting against the compensation to which she would be entitled for the land taken the enhancement in value of the land remaining. Our Supreme Court has held that this is improper. "It is of course settled that enhancement in market value of the residue of the land by reason of 'special benefits' is a legitimate offset to damages thereto, but not to the value of the part actually taken." State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194. See also Steele v. City of Anson, Tex.Civ. App., 229 S.W.2d 948, no wr. hist.

It is true that the jurors also testified that they considered and discussed the testimony of the expert witnesses on both sides and the prices that had been put on the blackboard and were satisfied that $3,002 represented the fair value of the land taken. The foreman, Mr. McKeel, testified that the jury "went" by the figures on the blackboard that they remembered; that they discussed the great "differential" between the testimony of the witnesses and that they "kind of levelled it off"; that they discussed the testimony of values on a square foot basis and "determined which one was the closest to the value we thought her property was before they took it." Another juror, Mr. Herod, testified that everybody got a scratch pad and "started figuring from the board, the high figures and the low figures"; that "you had your witnesses that said it was worth so and so and they said it was worth so and so. Their witnesses had the sales conclusive (sic) and we kind of split the middle, so to speak, tried to give her a fair and just price * * * of the land." All of the jurors who testified said that in reaching their verdict they followed the law and the evidence.

Yet, it is quite clear from all of the testimony of the jurors that in fact their answer of $3,002 to Special Issue No. 1 was arrived at by subtracting the enhanced value of the remainder ($8,498) from the agreed value of the entire tract before condemnation ($11,500), and that, having agreed on the amount ($3,002) they thought appellant should receive, they proceeded to answer the three issues in such manner as to give her that amount "and no more." This is spelled out very plainly in the testimony of the jury foreman, Mr. McKeel, on pages 32 and 46, and in the testimony of juror Herod on pages 65 and 66, of the testimony given at the hearing of the motion for new trial. No juror disputed this. It is also quite obvious from the jurors' testimony that the answers to Special Issues Nos. 2 and 3 were contrary to what the jury had in fact agreed upon. They had agreed (and this appears without dispute) tha. the *enhanced* value of the remainder *after* condemnation was $8,498, but they answered $8,498 to Special Issue No. 2, which inquired as to the value of the remainder immediately *before* condemnation. They agreed that $11,500 was the value of the *entire* tract *before* condemnation, but answered Issue No. 3 by giving that figure as the value of the *remainder after* condemnation.

Appellees argue that there was a conflict in the testimony as to whether misconduct occurred, and that it must be presumed from the overruling of the motion for new trial that the trial court found that no misconduct occurred, which decision is binding on appeal, citing Brawley v. Bowen, Tex.Sup.1965, 387 S.W.2d 383. However, we find no actual conflict in the evidence. All of the jurors who testified were in agreement as to the improper method employed in answering the issues. The facts that in doing so they considered the testimony of the expert witnesses and discussed their widely divergent opinions on values, and even considered the values on a square foot basis, and felt that they were giving appellant a fair and just price for her land, do not present a conflict. They are entirely consistent with the improper approach used by the jury; they probably

helped the jury arrive at the amount they wanted appellant to have as her net loss. Their notion of a "fair and just price" for the land taken evidently included the thought that appellant should give appellees credit for the increase in value of her remainder caused by the condemnation. Therefore, it is our view that there was no dispute as to the occurrence of misconduct.

 We are now quite well convinced by a careful study of all the testimony of the four jurors who testified that the verdict was arrived at by a method so contrary to the law and the court's instructions that it should not be permitted to stand unless we can say that no harm was shown to have been caused to appellant thereby. Crawford v. Consolidated Underwriters, Tex. Civ.App., 323 S.W.2d 657, wr. ref. n. r. e.

 This latter question now becomes one of law. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; White Cabs v. Moore, 146 Tex. 101, 203 S.W.2d 200; City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259. As it appears quite clearly that the jury's unorthodox method of answering the special issues has the effect of making the finding of value of the land taken dependent, to some extent at least, upon the agreed enhancement of the remainder after condemnation, it is obvious that injury probably resulted to appellant. Crawford v. Consolidated Underwriters, 323 S.W.2d 657, 659, wr. ref. n. r. e.; Texas Employers Ins. Ass'n v. McCaslin, 159 Tex. 273, 317 S.W.2d 916, 921. We determine this "as a matter of our judgment in the light of the record as a whole." Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115, 120. The first point of error is sustained.

Appellant's second, third and fourth points of error attack the answers to the three special issues as being against the overwhelming weight and preponderance of the evidence. Having already held that the method by which these findings were reached was so contrary to the law that

the judgment based thereon must be reversed, we consider it unnecessary to pass upon these points.

 Appellant's fifth and last point is that the judgment is excessive in that the court, in determining the excess of the commissioners' award over the verdict, charged appellant with the full $3,500 awarded by the commissioners whereas she was awarded and withdrew only $3,407.36 thereof. Appellant points out that on the trial there was no proof that the small amounts awarded to the City and County by the commissioners were actually taxes which were a lien on the land, or for which appellant was personally liable, or that she had not previously paid the same. As the record contains neither proof nor stipulation on the matter, the point must be sustained.

We reverse the judgment and remand the case for another trial.

Reversed and remanded.