**Edna Earl McKnight SIMS et al., Appellants,**

v.

**Cubie Marie McKNIGHT, Individually and as Independent Executrix of the Estate of Benjamin Clare McKnight, Deceased, Appellee.**

**No. 4.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Oct. 11, 1967.

Rehearing Denied Nov. 1, 1967.

Eddington, Kroll, Friloux & Smith, and C. Anthony Friloux, Jr., Houston, for appellants.

Vinson, Elkins, Weems & Searls and M. C. Chiles and Jarrel D. McDaniel, Houston, for appellee.

SAM D. JOHNSON, Justice.

The Probate Court of Harris County admitted the will of B. C. McKnight to probate and an appeal was taken to the District Court. Contestants, and appellants herein, are the children of the decedent by his first marriage. The proponent, and appellee herein, is the decedent's second wife of some thirty-seven years, and his surviving widow. The trial in the District Court was to a jury which found that the decedent had testamentary capacity by answering affirmatively the single special issue on this subject that was propounded by the court. Contestants filed their motion for new trial based solely on allegations of jury misconduct during deliberations upon the trial of this cause. The trial court overruled the motion for new trial. No findings of fact or conclusions of law were filed by the trial court.

By numerous points of error appellants allege a number of acts of jury misconduct: (a) a juror, during deliberations, obtaining from a dictionary the definition of a word or words used and defined in the court's charge, (b) by way of comparison with the decedent, jurors relating personal experiences with mentally ill people, (c) misstatement by jurors during their deliberations of the limitations of what evidence could be considered in arriving at a verdict, and (d) the cumulative weight of the alleged individual acts of misconduct by jurors.

Under Rule 327, Texas Rules of Civil Procedure, where jury misconduct is relied on as a ground for a new trial, two burdens rest on the party asserting it. He must prove by a preponderance of the evidence that misconduct occurred and he must establish that it probably resulted in injury to him. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259; Menefee v. Gulf, C. & S. F. Ry. Co., Tex. Civ.App., 181 S.W.2d 287, ref., w. m.; Watson v. Texas Indemnity Ins. Co., 147 Tex. 40, 210 S.W.2d 989.

Where, as here, no findings of fact or conclusions of law are filed, there is an original presumption that the trial court found all controverted facts in support of

its judgment overruling the motion for new trial and that there was no misconduct. Putman v. Lazarus, 156 Tex. 154, 293 S.W.2d 493; Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770; Milstead v. Aynesworth, Tex.Civ.App., 341 S.W.2d 942, writ ref., n. r. e.

If there is conflicting evidence on the motion for new trial on whether or not there was misconduct, determinations made by the trial court are binding on appeal. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62; State v. Wair, 163 Tex. 69, 351 S.W.2d 878.

The trial of this case lasted over two weeks and the jury deliberation lasted for part, at least, of two days. After the jury retired to deliberate the afternoon of the first day, the vote of the jury stood at 9 to 3 in favor of a finding that the decedent, B. C. McKnight, did not have testamentary capacity. The court's charge presented to the jury the single special issue concerning testamentary capacity of B. C. McKnight based on the "preponderance of evidence." That term was defined by the court as "the greater weight and degree of credible evidence before you." Following the first afternoon's deliberation, one juror, George Williams, went home and looked up the word "preponderance" in the dictionary and the following day advised the jury that the definition he found in the dictionary meant the "greater weight of the evidence" or "the most evidence." Later on in this second day the entire jury voted in favor of the decedent having testamentary capacity.

Two principal acts of misconduct are alleged during deliberations by two of the jurors making reference to their experiences with persons of unsound mind. In the first, juror Sarah Gilbert, in visiting with another juror in the hallway, remarked that she had a sister who was mentally retarded. Subsequently, and during the jury deliberations, Mrs. Gilbert was asked about what her sister would be capable of doing the things the decedent had done with help "if one of us stood over her and told her how, but that did not concern this case." Her response also included that her sister " * * * had brain damage, that mentally insane and mental retardation were not the same thing, that there was a broad line between them, that she never did or never could be able to do any of these things by herself." She was immediately rebuked for this by fellow jurors and advised that she should not mention personal experience with people who are mentally incapacitated. This discussion terminated and did not occur again. It is clear that statements of jurors concerning personal experiences constitute unsworn testimony, and, if pertinent to a disputed issue, can be such misconduct as will require a new trial. The burden of showing materiality and probable injury of course must be also met. Martin v. Shell Oil Co., Tex.Civ.App., 262 S.W.2d 564.

"There is nothing incompatible with justice in the act of a juror consulting a dictionary unless specific harm can be demonstrated." Davis v. Damge, Tex.Civ.App., 328 S.W.2d 203, 207, err. ref'd., n. r. e. In looking up the word "preponderance" in the dictionary, the juror Williams found no information at variance from that available in the charge. He gave no new information to the jurors when he said it meant the "greater weight of the evidence" or "the most evidence." Since the definition found by the juror Williams was the same, or similar, to the court's definition, no harm is shown. With the exception of one, fellow jurors testified that Williams in no manner attempted to use this information in discussing the evidence in the case or in attempting to persuade any juror. The trial court's implied finding that no harm resulted is fully supported by the evidence and the trial court did not err in overruling the motion for a new trial on this ground.

In the case of Davis v. Damge, cited above, a number of jurors looked up the meaning of the word "proximate" in dic-

tionaries and law books. The definition found by the jurors was not shown in evidence and was subject to speculation as to what definition the jurors actually found. The court there stated "There is nothing incompatible with justice in the act of a juror consulting a dictionary unless specific harm can be demonstrated." In the case at bar appellants rely upon the later change of position on the part of jurors as the principal showing of "harm." This falls short, however, of establishing specific harm that probably resulted in injury to the contestants.

The remarks in this instance were clearly limited by Mrs. Gilbert in her concluding that "there was no comparison between the two and couldn't be related, that it didn't have any bearing on the case." By responding to the inquiry in this fashion, Mrs. Gilbert cannot be said to have been making a comparison to the decedent and was clearly not attempting to make any argument to sway the other jurors. The remarks of this juror were made in answer to a question of another juror about her sister and fall in the category of casual remarks that were promptly rebuked. Under such circumstances, no harm is shown. See Spear v. Central Distributing Co., Tex.Civ. App., 384 S.W.2d 180, err. ref., n. r. e.; Putman v. Lazarus, 156 Tex. 154, 293 S.W. 2d 493 (1956).

In the second instance a different juror, Mrs. Serenia Rocio, attempted to inject a discussion of her experiences as an employee in a mental hospital to the jury. This juror had consistently expressed herself and voted throughout the jury deliberation for the appellant's contention that the decedent lacked testamentary capacity. She was one of the last, if not the last, juror to change her vote and did so just prior to the time that the jury returned its verdict. Her testimony, and that of other jurors, is to the effect that she did attempt to use her experience to try to persuade the other jurors to her original position, that is that the decedent lacked testamentary capacity.

In Crawford v. Consolidated Underwriters, Tex.Civ.App., 323 S.W.2d 657, err. ref, n. r. e., the jury agreed to "flip a coin" to determine an award in a Workman's Compensation case. The result of the "coin flip" was to give the appellant a higher award. The court held that flipping the coin was obviously misconduct but that the appellant could not complain of it since he had suffered no injury. The court said "[i]nstead of suffering injury as a result, however, the plaintiff benefited and is therefore in no position to complain of the incident." Until the final part of the jury's deliberation and the last vote taken, Mrs. Rocio consistently contended and argued that the decedent was of unsound mind. Here the misconduct of the juror throughout substantially all of the jury's deliberation was calculated and intended to benefit the position of the appellant. As the misconduct complained of was beneficial to the appellants, they cannot now complain of it. Crawford v. Consolidated Underwriters, supra; and see Moore v. Scott, Tex.Civ.App., 16 S.W.2d 1100 (err. dism'd.).

Misconduct is further alleged based on one or more of the jurors' statement of the limitations on what evidence could be considered in arriving at a verdict. A great deal of documentary evidence had been introduced by appellee concerning the decedent's ability to attend to his affairs at the time the will was prepared and signed. At least two jurors stated, in the hearing on the motion for new trial, that they believed that they could only consider the evidence that was before them, as contrasted to the witness' testimony that was presented in the trial of the case. Both, however, qualified their assertion considerably. Juror Brewster, making the response about whether he considered Dr. Vogt's testimony that "I heard his testimony and I believed what part I wanted to." Juror Rocio, on close questioning about her consideration of a witness' testimony that was reread by the court reporter at her suggestion and whether or not she considered it even though it wasn't "on the table" responded,

"I didn't say what evidence. You consider all the evidence. He was here as a witness and I think you hear it all and listen to the witnesses." She was then questioned, "And then they did discuss the doctor's evidence, didn't they?" She responded, "Yes, we discussed everything that happened in the trial."

Eliminating, however, the apparent contradiction in these jurors' statements, their allegation that they thought the jury could only consider the evidence that was "on the table" was strongly controverted by the other jurors that testified. Other jurors confirmed that at all times it was made plain to the jury as a whole that they must consider the testimony as well as the documentary evidence before them. We just presume, indeed are bound by the presumption, in view of the conflicting testimony, that the *trial judge made implied findings that jury misconduct did not occur in this respect. "The above testimony is conflicting on all of the grounds of jury misconduct alleged in the motion for new trial. Therefore, the trial judge's implied finding that jury misconduct did not occur is binding on this Court." Brawley v. Bowen, 387 S.W.2d 383 (Tex.Sup.1965).

It is well recognized that a number of repeated instances of misconduct during deliberation of a jury, though harmless if taken separately, may, in combination, call for a reversal of the verdict. Gonzalez v. Broussard, Tex.Civ.App., 274 S.W.2d 737; Scroggins v. Curtiss & Taylor, 148 Tex. 15, 219 S.W.2d 451; Sproles Motor Freight Lines v. Long, 140 Tex. 494, 168 S.W.2d 642. Rule 327, T.R.C.P., provides that a new trial may be granted if the misconduct proved to be material and: "* * * if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and *from the record as a whole* that injury probably resulted to the complaining party." It is the appellant's position that the record in its entirety demonstrates probable injury and that the "overt acts of misconduct" themselves are suffi-

cient to support their allegation of probable injury, citing Texas Employers Insurance Association v. McCaslin, 159 Tex. 273, 317 S.W.2d 916 (1958). In McCaslin, a Workman's Compensation case, the plaintiff during the trial sought out a member of the jury and urged her to do all she could to help her obtain a favorable verdict. The court held that an overt act itself may be so highly prejudicial and inimical to fairness of trial that the burden of going forward with proof of harm is met by showing the act and nothing more. The court therein held that the act of the prevailing party, the plaintiff, was within that category.

The "McCaslin Rule" was discussed by the Supreme Court in St. Louis Southwestern Railway Co. v. Gregory, 387 S.W.2d 27 (Tex.Sup.1965). The court, in limiting the application of the rule, said: "There are some types of misconduct, such as jury tampering, in which the burden of proving probable injury is discharged, prima facie, by mere proof of the overt act itself." Texas Employers Insurance Ass'n. v. McCaslin, supra.

The case at bar presents no comparison to the facts found in the McCaslin case. As said by the Supreme Court in commenting on the McCaslin Rule's consideration in Aetna Casualty & Surety Co. v. Perez, Tex.Civ.App., 360 S.W.2d 157, " 'This is the rule, and a good one, but its extension into new areas flirts with the re-adoption of the discarded rule of presumed harm in misconduct cases.' Having concluded that mere proof of the acts of misconduct on the part of the juror Bradford does not establish that the trial was materially unfair to the plaintiffs, we examine the record to determine whether it discloses proof of probable injury to the plaintiffs." St. Louis Southwestern Railway Co. v. Gregory, 387 S.W.2d 27 (Tex.Sup.1965).

Here the appellants have the obligation to review the entire record which requires a review of the evidence adduced at the trial of the cause. However, appellants do

not refer to any evidence adduced on the trial in chief. Having failed to point out the testimony in the 1,202 pages in the statement of facts which would support appellant's conclusion that they were entitled to a verdict that B. C. McKnight did not have testamentary capacity, appellants do not meet the burden of showing probable injury and the judgment of the trial court should be affirmed. Rule 418, T.R.C.P.; Hughes v. Grogan-Lamm Lumber Co., Tex. Civ.App., 331 S.W.2d 799, err. ref'd, n. r. e.; Novita Oil Co. v. Smith, Tex.Civ.App. 247 S.W.2d 151.

The judgment of the trial court is affirmed.

Affirmed.