## CHESLICK et ux. v. LEE MOOR CONTRACTING CO.
### No. 2973.

Court of Civil Appeals of Texas. El Paso.
March 22, 1934.

Rehearing Denied April 5, 1934.

Henry T. Moore and R. L. Holliday, both of El Paso, for appellants.

Jones, Goldstein, Hardie & Grambling, of El Paso, for appellee.

WALTHALL, Justice.

On the 27th day of December, 1932, appellants, Victor Cheslick and wife, Charlotte A. Cheslick, occupied their house on the highway between El Paso and Ysleta, Tex., about 100 feet from and which crossed the main highway between El Paso and Ysleta, and commonly known as the Cadwallader Bridge, a concrete structure built over a canal. At that time appellee, Lee Moor Contracting Company, a domestic corporation, was attempting to remove said bridge by blasting with dynamite. Appellants allege that on said date, while they were in their said home, appellee negligently commenced blasting said bridge. in such a manner that an unusually loud and frightening explosion occurred, and large quantities of concrete, rocks, dirt, and other débris were thrown into the air and over, upon, and against their home, and in such manner that their house was shaken and damaged, and appellant Charlotte Cheslick was greatly frightened and shocked so that thereby she was caused to faint and have a nervous collapse and commenced hemorrhaging to the extent that pains of labor were brought upon her and a miscarriage was produced; and alleged other personal injuries to Charlotte Cheslick resulting from said explosions, such as expenses for services of physicians, damages to their home by reason of rocks and débris thrown against said building in said blasting, negligently done as stated, and which proximately caused the actual damages stated.

Appellants assigned as negligence acts on the part of appellee, other than the above, a failure to give warning of the blasting, the use of too large quantities of dynamite, etc.

Appellee answered by general demurrer, general denial, and contributory negligence on the part of appellants.

The case was submitted to a jury on special issues, and all issues submitted were found in favor of appellee, on which findings judgment was entered in favor of appellee, and appellants perfect this appeal.

### Opinion.

Appellants submit a number of propositions suggesting reversible error. We think to consider only those referring to misconduct of the jury.

In response to special issue No. 4 the jury found that appellant Mrs. Charlotte Cheslick was not injured by reason of such explosion.

Under special issue No. 6 the jury found that appellee, in doing the blasting, did not use a larger amount of dynamite than a person of ordinary prudence would have used under the same or similar circumstances.

The issues of injury, as alleged, to Mrs. Cheslick, by reason of the blasting with dynamite, and the issue of negligence of appellee in the manner of the uses of the dynamite as an explosive, were vital issues in the case, and the way the dynamite manifested its force when exploded, whether up or down or sideways.

The evidence was to the effect that the dynamite explosions occurred on the 27th of December, and that Mrs. Cheslick had a miscarriage about. the 29th or 30th of December, and that she was more or less affected for some two or three weeks thereafter.

Juror Becker testified that he asked his wife during the trial how long it took a miscarriage to manifest itself and she said 24 hours; said he wanted to know; said: "Some of the jury did say the length of time, the experience they had had would be sooner. * * * They were speaking of three weeks being a long time it might happen. We mentioned that, we argued on that. Sure, I told them how long, I investigated."

On the question of misconduct as to the use of the dynamite, Juror Jose Candelaria testified: "I told them (the jury) I had used a little, and I had found out by what I had used, the dynamite sometimes will blow right straight up and sometimes—it all depends on the kind of place where it is put, if it is solid and well done it won't even blow up, but I have seen it blow up and have seen it blow to one side and blow down. That is all I told them * * * I told them what happened to me, my experience * * * I could not tell which way it was going to blow. I made that statement * * * These statements were made when this question was being discussed when we were making the answer to the question whether or not too much dynamite was being used. The jury finally voted after these statements were made by me, and the others made their statements. Of course, I was, in answering the question, thinking about my experience with dynamite and that you couldn't tell which way it was going to blow."

The juror's examination was lengthy, and we have quoted only portions of it.

We see no objection to Juror Cole's statement. His statement apparently was a reasoning from his own experience. The record does not show that he stated his experience to the jury.

Juror Lujan testified: "I remember an argument made by Juror Jose Candelaria in regard to his experience with dynamite. He stood up and said that he had some experience in dynamiting, and that he had seen cases where dynamite sometimes would blow down. * * * I was paying attention to the information this man Candelaria volunteered. That did influence me in the way I answered the question. I don't know if he convinced the jury or not, he convinced me on that question that he had experience with this dynamite and it wasn't hard enough to damage the house." Juror Aguirre testified: His statement was similar to that of Juror Lujan; said: "This argument (Candelaria's) was made before the jury to try to influence them to answer the question. It influenced me in answering it. * * * And he said he thought it wasn't an excessive amount of dynamite."

Appellee submits that the granting or denial of a motion for new trial, on account of misconduct of the jury, is largely within the discretion of the trial court, and its action will not be disturbed except for abuse of such discretion, and refers us to the case of James A. Dick Co. v. Yanez et al. (Tex. Civ. App.) 55 S.W.(2d) 600, 604. It will be observed in that case there was a conflict in the evidence as to what occurred in the jury room on the very matter in the motion stated to be misconduct of the jury, some of the jurors testifying to what occurred, and which, if true, misconduct would be shown, and other jurors testifying to a different state of facts, which, if true, misconduct would not be shown. In that case this court, through Judge Pelphrey, said: "We think it is now well established that in passing upon the evidence on the hearing of a motion for a new trial (on the ground of misconduct of the jury) the trial court is the judge of the credibility of witnesses and of the weight to be given to their testimony." That is, on the conflict of the evidence, the trial judge may primarily determine the fact of what occurred in the jury room in passing upon the motion. Here, there being no conflict in the evidence as to what occurred in the jury room, there was no fact to be found by the trial judge and hence no discretion to exercise. The evidence is undisputed that one of the jurors went outside of the evidence heard on the trial, ascertained from his wife what the fact was as to a material issue in the case, and stated to the jury the evidence he had gotten from her. This newly discovered evidence was discussed by the jury, and apparently, from the record, other jurors had similar experiences of their own which were discussed in the jury room.

Appellee points out, in his brief, evidence in the record which might have caused the same result, and have accounted for the jury's finding on the issue; but the evidence referred to does not relieve the record of the misconduct of the jury.

On the question of misconduct of the jury in regard to the issue whether appellee used a larger amount of dynamite than a person of ordinary prudence would have used, one of the jurors stated his experience to the jury before the issue was voted on, "and the others made their statements," and one of the jurors said: "He convinced me on that question that he had experience with this dynamite *and it wasn't hard enough to damage the house.*" Another juror said: "This argument was made before the jury to try to influence them to answer the question. *It influenced me in answering it.*" It appears from the undisputed evidence, as disclosed by the record, that two of the vital issues of fact in the case and submitted to, were determined by evidence not offered on the trial of the case. On the effect of the explosion of the dynamite, it might be stated that Mr. James A. McClendon, general foreman or superintendent

on the job, a witness for appellee, said that the dynamite explosion on the occasion in question put a hole in appellant's house, and broke a window in the end of the house.

Ernest Ray Perry testified for appellee: Was powder man on the job; used 40 per cent. dynamite in the blasting; after the explosions saw a hole in appellants' house; knew there were holes in the roof from the explosions.

Now we are not determining what the facts are or should have been found to be, but have considered the testimony of McClendon and Perry in connection with the finding of the jury evidenced by their own experience as detailed in the jury room.

Appellant complains that several negligent acts of appellee pleaded by appellant, and upon which evidence was offered, were not submitted in the charge to the jury. Without discussing them severally, we think they should have been submitted.

For reason of the misconduct of the jury as appears in the record and pointed out in appellants' motion for a new trial, the case is reversed and remanded.