NORRIS BROTHERS, Inc., v. MATTIN-SON.

No. 13768.

Court of Civil Appeals of Texas.
Fort Worth.

May 20, 1938.

Rehearing Denied June 17, 1938.

Fay Prescott, Cantey, Hanger, McMahon, McKnight & Johnson, and J. A. Gooch, all of Fort Worth, for appellant.

Hamlin Smithdeal and H. T. Bowyer, both of Dallas, for appellee.

BROWN, Justice.

This suit was instituted by appellee against appellant, for personal injuries sustained when one of appellant's employees, alleged to be on a mission for his employer, propelled his automobile into appellee on a public street within the City of Fort Worth, when appellee was crossing the street, for the purpose of boarding a north bound bus.

The undisputed evidence shows that appellee, instead of crossing the street and placing himself on the east side thereof, for the purpose of boarding the north bound bus, stood on the west side of such street until the bus approached, and that he then signaled the bus to stop and attempted to cross the street to board the bus, when he was struck by the automobile. The accident happened around 2 P. M. and appellee, in detailing what he did prior to attempting to cross the street, stated emphatically that he first looked up the street and then down the street, and that in doing so he saw two automobiles, one approaching from the north and the other from the south, and that he observed a third automobile behind the one approaching from the north, which was approximately a full block away at the time; that he figured that when the first two automobiles passed the point at which he stood, he could then cross the street with safety. In detailing what he did and how he acted, appellee frankly admitted that he neither looked to the right nor the left after he started to cross the street in question.

The cause was tried to a jury, and 16 special issues were submitted. On the issues the jury found, (1) that the accident was not unavoidable; (2) that immediately prior to the collision, appellant's employee was operating his automobile at a rate of speed in excess of 20 miles per hour; (3) that the operation of the automobile at such rate was a proximate cause of the collision; (4) that said employee did not sound his horn immediately prior to the collision, and such act was negligence; (5) that such negligence last inquired about was the proximate cause of the collision; (6) that defendant's employee failed to keep a proper lookout immediately prior to the collision; (7) that such failure was a proximate cause of the collision; (8) that defendant's employee did not discover that appellee was in a position of peril; (9) that appellee did not fail to keep a proper lookout for his own safety immediately prior

to the collision; (10) that appellee did not dash out into the street suddenly; (11) that appellee was not attempting to cross the street at a place other than the end of the block, designated for pedestrian traffic; (12) that the act of appellee in attempting to cross the street at a place other than the end of the block was not a proximate cause of the collision; (13) the amount of damages was assessed at $3,-845.83.

Objections were levelled at the charge and overruled. On the verdict, judgment was rendered for appellee (plaintiff below). Motion for a new trial was timely filed, presented and overruled by the trial court, and the cause was brought to us for review.

We find twelve assignments of error presented in appellant's brief, but, viewing the case as we do, we shall not discuss all of them.

■ The fifth assignment of error complains of the trial court overruling appellant's objection to special issue No. 1, which required the jury to find from a preponderance of the evidence whether or not immediately prior to the collision in question appellant's employee was operating his automobile at a rate of speed in excess of 20 miles per hour. We have searched the statement of facts, and the only testimony introduced by appellee on the matter of speed at which appellant's employee was operating his car comes from the lips of appellee, and under his positive testimony, the only time and the last time that he saw the automobile it was some 400 feet north of him, and he estimates in his testimony that at that time the car "looked like it was running at a moderate rate of speed, about 35 or 40 miles an hour." All of the other testimony comes from the defendant's side, and it bears directly upon the rate of speed the automobile was being driven immediately prior to the accident. We are frank to say that the preponderance of the testimony tends to show that the automobile was not being driven at a rate of speed in excess of 20 miles per hour immediately prior to the accident. We sustain this assignment of error, particularly in view of the fact that testimony was introduced to show that the automobile skidded some little distance after the brakes were applied by appellant's employee, and that one of the jurors, on the hearing of the motion for a new trial, frankly admitted that he went out to the scene of the accident, viewed the premises and tried his own car out on the same street, not far from the scene of the accident, and on what he testified was the same sort of pavement, and that he reported to the jury during their deliberations that an automobile would not skid if it were stopped suddenly when going at the rate of ten or twelve miles per hour.

■ The ninth, tenth and eleventh assignments of error raise issues touching misconduct on the part of the jury during the trial of the case, and while the jurors were considering the case. We think these assignments of error should be sustained.

One of the jurors was considerably worried over the issue of whether or not appellee was keeping a proper lookout for his own safety immediately prior to the time he was struck by the automobile, and he admits that he went out to the scene of the accident, and that he had his wife to observe the time that it took him to drive in his automobile from the place on the street in question where appellee said he saw an automobile approaching from the north, some 400 feet away, and that he also undertook to walk toward the center of the street on which appellee was struck, in the manner in which appellee testified that he walked, and he testified frankly that he went back to the jury room the next day and communicated the results of the test made by him. He told the jury that he timed himself covering the distance in his automobile at a rate of speed of 35 miles per hour.

Another juror testified that on the very day the taking of evidence began, he went out to the scene of the accident, in order to satisfy his own mind, and said that he found the situation different from what he had gathered from the testimony. This juror admitted that he tried his own car out to see how quickly it would stop at the rates of speed of 20 miles per hour and 30 miles per hour. He said that he did this for the purpose of finding out how far his car would skid, and that while he did not measure the skid marks, he looked at them and estimated the length of the skid marks. This juror frankly testified that when he came back the next day, he communicated to the jury panel the fact that he had gone out to the place of the accident and told them about making the test, and he said that he told the jury panel that an automobile traveling at the rate of

10 miles an hour would not skid; that he had tried it out and found that it would not, and that his conclusion was that an automobile would have to travel faster than 10 or 12 miles per hour before it would skid.

What these jurors testified to was amply corroborated by other jurors. It cannot be reasonably said that such misconduct does not vitiate the verdict of a jury. The very testimony of the jurors who visited the scene of the accident and who made the tests, discloses that they were influenced thereby, and if these jurors and the remainder of the panel had testified implicitly that they were not influenced in reaching a verdict by reason of such misconduct, nevertheless, we could not permit the verdict to stand. Traders & General Ins. Co. v. Lincecum, 107 S.W.2d 585, opinion adopted by the Supreme Court. Many cases could be cited by us, but we are content to cite only two others: Southern Traction Co. v. Wilson, 254 S.W. 1104, and Moore v. Ivey, 277 S.W. 106, both by the Commission of Appeals. The ninth and tenth assignments of error are sustained.

■ The eleventh assignment of error raises the question of misconduct on the part of one of the jurors, in that there was considerable discussion as to the meaning of the words "immediately prior to the collision", when the jury was deliberating over the issue as to whether or not appellee failed to keep a proper lookout for his own safety immediately prior to the collision. One of the jurors frankly admitted that he used a dictionary for the purpose of satisfying his own mind, and that studying the dictionary caused him to change his mind in voting upon this important issue. He frankly admits that he discussed with the rest of the jurors what he got out of the dictionary. We sustain the eleventh assignment of error. Corpus Christi St. & Interurban Ry. Co. v. Kjellberg, Tex.Civ.App., 185 S.W. 430; S. Lightburne & Co. v. First Nat. Bank, Tex. Civ.App., 232 S.W. 343. Assuredly it is not permissible for even one juror to thus seek information with reference to definitions and meanings of words found in the court's charge for his own guidance, and even though he did not disclose what he found in the dictionary to the other members of the panel, it is self-evident that he must have been influenced by what he found in arriving at his verdict.

■ It seems that in plaintiff's petition it was specifically alleged that appellant's employee was negligent, in that he failed to have an operator's license or driver's permit, required by the law, and that the employee was operating the car in violation of the law, all of which the employer knew and permitted, or should have known and could have known by the exercise of ordinary diligence. No effort was made to sustain these allegations by proof, and, of course, the defendant made no effort to answer the allegations, but it appears from the twelfth assignment of error that the fact that the defendant did not seek to disprove such allegations was freely discussed in the jury room, and at least one juror testified to the effect that this matter influenced him to some extent. The allegations made should not have been placed in plaintiff's pleadings. They are highly prejudicial and are calculated to influence the jury and to create bias and prejudice. They should be stricken before another trial.

■ Whether or not appellant was entitled to a peremptory instruction on the theory that the undisputed evidence from the lips of appellee shows that he did not keep a proper lookout, and that as a matter of law this was contributory negligence upon his part, has given us much concern. We are frank to say that the evidence appears to establish the fact that appellee did not keep a proper lookout for his own safety immediately prior to the collision, and from the time he left the curbing and attempted to walk across the street to catch the bus. We do not believe that it can reasonably be said that an issue of whether or not appellee kept a proper lookout for his own safety was raised when appellee testified that he saw a car coming toward him, coming from the north, when such car was at a distance of approximately 400 feet from him, and that he nevertheless walked out into the street and attempted to cross the same, without even looking a second time to observe the approaching car. It appears to us that his evidence establishes the fact that he thus failed to keep a proper lookout for his own safety, but our Supreme Court has gone a long way in permitting jurors to say whether or not an act of negligence is a proximate cause of an injury, and we are not disposed in this case to announce a doctrine that appears to be in conflict with the pronounce-

ments of our Supreme Court. We do not believe that the finding of the jury to issue No. 9, to the effect that appellee was keeping a proper lookout for his own safety immediately prior to the accident, is supported by the evidence, but there being no finding on the issue of proximate cause, we decline to reverse and render the case.

In the case of Southland Greyhound Lines, Inc., v. Richardson, Judge, et al., 126 Tex. 118, 86 S.W.2d 731, opinion adopted by the Supreme Court, it is said (page 735): "The fact that plaintiff was driving on the side of the highway where he had a lawful right to be did not relieve him of the duty to use care in keeping a lookout. * * * Certainly the obligation to use care in keeping a lookout rests always upon every driver of an automobile upon a public highway, although the degree of care required varies, of course, in accordance with the particular circumstances and conditions."

If we assume that appellee, in the suit before us, was well within his rights in not crossing the street and placing himself on the side thereof where he was compelled to board the bus, and in waiting on the wrong side of the street until the bus came along, and that he was well within his rights in crossing the street, at the time and place in question, nevertheless he admits that he saw the automobile, which he claims must have been the one that struck him, coming toward him from the north, some 400 feet away, and that it appeared to be traveling 35 or 40 miles per hour, and that this was before he stepped from the curb and undertook to cross the street in front of it; and he quite frankly admits that he did not thereafter so much as look in the direction of the oncoming vehicle, which he knew was bearing down upon him at such rate of speed.

If it is the duty of the driver of every vehicle that is rightfully on the highway to exercise care to keep a proper lookout, it is assuredly the duty of a pedestrian who is rightfully using the public highway when he crosses it to exercise care to keep a proper lookout for vehicles that may be approaching from each direction.

Here we have a pedestrian who made no effort to keep a lookout, after he started across the highway, although he testifies that he saw a vehicle approaching him, going at a speed of from 35 to 40 miles per hour.

It strains our imagination to believe that appellee's admitted conduct and the facts disclosed by him raise any issue for a jury to determine whether or not he was guilty of negligence in attempting to cross the street, in the manner and under the circumstances related by him. Rather does it appear to us that the undisputed testimony from appellee's lips establishes the fact that he was negligent. It is equally difficult for us to see how appellee could shut his eyes to the duty of keeping a proper lookout for his own safety, under the circumstances shown and admitted in this case, and that these facts raise an issue on which the jury could find that such conduct on the part of appellee was not a proximate cause of the accident.

We pretermit passing upon the assignments of error that are not discussed, believing that they may not arise on another trial.

For the reasons given, the judgment of the trial court is reversed, and the cause remanded.