**WILLRODT et al. v. UNION CITY TRANS-FER et al.**

No. 15428.

Court of Civil Appeals of Texas. Fort Worth.

May 8, 1953.

Rehearing Denied June 5, 1953.

See also, 250 S.W.2d 411.

444

Miller & Rutta, of Columbus, Massey, Hodges, Moore & Gates, of Columbus, John M. Pennington, of Houston, and Helm & Jones, of Houston, for appellants.

W. W. Ellison, of Gonzales, and John H. Benckenstein, of Beaumont, for appellees.

RENFRO, Justice.

Suit was brought in the District Court of Colorado County, Texas, by the surviving wife and children of A. W. Willrodt against Cecil E. and E. H. Vallee, individually and doing business as a partnership in the name of Union City Transfer, for damages for the death of the said Willrodt resulting from a collision which occurred on July 31, 1951. Based upon a jury verdict, judgment was entered that the plaintiffs take nothing.

The appeal is before us on one point of error, namely, the trial court erred in overruling appellants' motion for a new trial based on material misconduct of the jury.

The testimony showed that the deceased Willrodt was driving a pickup in the direction away from Columbus, Texas, while the truck of appellees, driven by Smallwood, was traveling in the direction toward Columbus. The highway was newly constructed and was twenty-two feet in width. There were no center line markings. There was pea gravel on the highway and on the shoulders. Smallwood, the driver of the truck, testified that the collision occurred about 7:15 P.M. and that he was entering the south end of a curve, 764 feet in length, when he observed the pickup on the left-hand side of the road and it seemed the pickup was going into the Tanner driveway on the west side of the highway. The pickup did not go into the Tanner driveway, however, but continued on down the highway on Smallwood's side of the highway. According to the witness, he was driving his vehicle, a truck and trailer, loaded with oil field equipment, at approximately 25 miles an hour; that if his estimate of speed was correct, he was approximately 200 feet from the point of collision when Willrodt was 400 feet therefrom. Smallwood did not sound his horn and did not apply his brakes sufficiently to skid the tires on the truck. There was a firm shoulder but he did not undertake to turn to his right. On cross-examination, he testified that he could have stopped his truck before the collision in a space of 150 feet. The witness was asked, "* * * but I am talking about how long it would take you to stop that truck if you made a moderate application of the brakes, with that load, going 25 miles an hour on that road. Couldn't you do it in 150 feet? Answer: "Yes, sir." Also, "Q. So you could stop it in 150 feet, that is right, isn't it? A. Yes, sir." The witness said he drove on the right side at all times after he saw Willrodt over the center of the road and hardly got off on the shoulder.

The witness Gresham, driving another truck for appellees, was driving 150 to 200 yards ahead of Smallwood. He testified that he could have gone off on the shoulder and would have done so if it had been

necessary and that he would not have had any trouble in getting on the shoulder.

The witness Waldvogel testified that appellees' truck entered the curve at a rate of 35 to 40 miles an hour and the truck was partly to the left of the center of the road at such time. He did not see the actual collision but when he last observed the truck it was being driven about 2 feet left of the center of the road.

Smallwood testified that he did not have time to stop in order to avoid the collision; that the pickup hit his truck before he could stop; that if he had jammed his brakes the truck would have jackknifed. One witness testified that such a truck as driven by Smallwood at 25 miles per hour would require a distance of 367 to 550 feet to bring to a complete stop.

The statement of facts contains several hundred pages and we will not attempt to further summarize the evidence. It is sufficient, in our opinion, that the jury could have answered either way on the negligence issues and could have found for the plaintiffs on the issues of discoverd peril. Actually, the jury acquitted appellees' driver of primary negligence and found deceased guilty of two acts of negligence proximately causing the collision. The jury found the accident was unavoidable. The jury further found that the deceased was in a position of peril immediately prior to the collision; that appellees' truck driver discovered such position of peril; that the truck driver realized prior to the collision that A. W. Willrodt, deceased, could not and in reasonable probability would not be able to extricate himself from such position of peril; and that such discovery and realization of the perilous position of deceased were made at such time and distance as that in the exercise of ordinary care and the use of all the means at his command, consistent with his own safety and that of his vehicle and its contents, the truck driver could have avoided the collision. In answering the next issue, however, the jury found that the truck driver did not fail to exercise ordinary care.

On the hearing on the motion for new trial, the juror Mrkwa testified that the jury received the charge between four and five o'clock in the afternoon and returned a verdict between four and five o'clock the next morning. He told the jurors that he had had experience driving a truck similar to the one Smallwood had driven; he told the jurors "you can apply your brakes and come to a pretty sudden stop and you can have loose gravel and you apply your brakes and the wheels in the loose dirt would carry you off." He also told the jurors his experiences in dynamiting a truck similar to the one in question—"you just dynamite your truck, * * * something is going to happen, either your load is going to snap or your truck will jackknife." In answer to the question, "Was there anybody on the jury that you had a hard time convincing about keeping control of a truck and trailer," the juror answered, "Oh, yes, but that wasn't considered in the case." According to his memory, juror Ulrich was the only other juror who had had experience driving heavy trucks. He told the jury that from the fact that he had driven trucks he knew what would happen if the brakes were dynamited.

The juror Kantsteiner testified he heard Mrkwa say something about his experience with trucks; that the jury was stuck on some issues, probably an hour before they got the things straight how they were going to answer the question. He thought Mrkwa made his statement about midnight when they went to get some coffee.

The juror Leppin testified that he heard Ulrich make statements about his experience in driving trucks before the jury started deliberating on any of the issues. He heard Ulrich say that you could not stop a truck like that at that speed in 150 feet; that Ulrich said that he had driven the same kind of trucks; that Ulrich said he knew from his experience that you could not stop within that distance.

The juror Bahner testified he heard Ulrich say he knew from his experience you could not stop a truck in 200 feet, a truck of the kind Smallwood was driving. He thought the statement was made right at the beginning of the deliberations.

The juror Boerr testified he heard the juror Ulrich say before they began deliberations that he knew from his experience

you could not stop a trailer truck within 200 or 150 feet.

Juror Glancy, foreman, testified he could not be certain whether Ulrich made any statement about his experiences in truck driving. He could have said something but the witness could not say that he did or did not. Neither did he hear what the juror Mrkwa, who was at the far end of the table, might have said.

It is uncontradicted that the statements set out above were made. Glancy did not deny they were made.

 Under Rule 327, T.R.C.P., the party asserting misconduct has the burden of proving by preponderance of the evidence that such misconduct occurred and that such misconduct probably resulted in injury to him. Watson v. Texas Indemnity Ins. Co., 147 Tex. 40, 210 S.W.2d 989. If the evidence is conflicting on the question as to whether or not the misconduct occurred, the decision of the trial court, either way, on that question should be accepted as final. When misconduct is established, the question of injury is one of law for the reviewing court. Both the trial and reviewing courts have the right to view the matter in the light of the entire record. By the entire record is meant the evidence heard on the motion presenting misconduct, the evidence on the main trial, and any and all other parts of the record which may throw light on the question of injury. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462.

 The fact that some of the jurors did not hear the statements is not material. As said in Texas & P. Ry. Co. v. Gillette, 125 Tex. 363, 83 S.W.2d 307, 309, " * * * the fact that some of the jurors were not present when the discussion was had rather accentuates the error. * * *"

 The fact that similar testimony was before the jury does not relieve the record of the misconduct of the jury. Cheslick et ux. v. Lee Moor Contracting Co., Tex. Civ.App., 70 S.W.2d 222, error refused.

 Although the jurors on the hearing of the motion for new trial testified the statements did not affect their verdict, such denials should not be considered by the court. Moore v. Ivey, Tex.Com.App., 277 S.W. 106.

 It is not permissible to allow a juror to preserve or destroy his verdict by testifying to the mental processes by which he reached the same. Sproles Motor Freight Lines, Inc., v. Long, 140 Tex. 494, 168 S.W.2d 642; also, Motley v. Mielsch, 145 Tex. 557, 200 S.W.2d 622.

 In City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259, the question was whether or not the driver of a mowing machine could have seen a child walking on the shelled portion of the street. One of the jurors told the other jurors that he had driven a mowing machine and he knew that the child could have been seen. The misconduct in that case is very similar to that in the instant case. In this case, although the driver of appellees' truck had admitted that he could have stopped within 150 feet, the juror Ulrich stated to the jury that he had had experience driving the same type of truck and based on that experience he knew the truck could not be stopped within 150 feet. The Supreme Court, in the City of Houston case, held the misconduct to be such as to require a new trial.

In Crawford v. Detering Co., Tex.Sup., 237 S.W.2d 615, the juror Landis was guilty of similar, improper conduct during the deliberations. In that case, discovered peril was pleaded by the plaintiff. The court held that the vital issue (inquiring whether the driver of defendant's truck discovered and realized plaintiff's position of peril in time to have avoided the accident) should have been answered from a preponderance of the evidence introduced in open court. The fact that the juror Landis did not give any measurements, time or distances did not remove the harmful effects of his testimony.

 The appellees contend that the statements made by the jurors Mrkwa and Ulrich were matters of common knowledge. It may be that the distance required to stop an ordinary motor vehicle is a matter of common knowledge, but we believe it is not a matter of common knowledge how

long it takes to stop a heavy trailer truck loaded with oil field equipment, as in this case. Only the two jurors mentioned had experience as operators of such trucks. The additional testimony relating to the distance in which a truck of such type could be stopped was given to the jury at a time when appellants had no opportunity to object to it and no opportunity to cross-examine said jurors. Although the jury found that the driver of the truck discovered. the perilous position of the deceased and realized the perilous position of deceased at such time and distance as that by the exercise of ordinary care in the use of all the means at his command consistent with his own safety and that of his vehicle and its contents he could have avoided the collision, yet they further found, in answer to the, succeeding issue, that the. truck driver did not fail to exercise ordinary care. The findings are highly inconsistent, if not actually in conflict. It is reasonably probable that the jury answered that Smallwood did not fail to use ordinary care because of the improper statements made by Mrkwa and Ulrich.

In determining the issues on discovered peril, the time and distance in which Smallwood could have stopped the truck were vital issues. From an examination of the entire record, we have concluded that the misconduct of the two jurors mentioned was calculated to work an injury to appellants and that it probably did, so. The appellants having shown misconduct concerning a material issue, and it appearing. from the record as a whole that injury probably resulted to the appellants, their motion for new trial should have been granted.

We, therefore, reverse the judgment of the trial court and remand the case for a new trial.