GULF STATES EQUIPMENT COMPANY, Appellant,

v.

Joe W. TOOMBS, Appellee.

No. 3316.

Court of Civil Appeals of Texas. Waco.

Feb. 2, 1956.

Rehearing Denied March 15, 1956.

204

Allen Melton, James R. Ellis, Dallas, for appellant.

Allred & Bowers, Lubbock, for appellee.

HALE, Justice.

Appellee brought this suit on a written contract of employment, whereby he sought to recover certain commissions alleged to be due him. The contract was entered into on June 10, 1947 and continued in force until it was terminated in accordance with its provisions on December 15, 1950. Under the contract, appellee was to receive $300 per month as a drawing account, and in addition thereto, he was to be paid certain commissions on all orders for merchandise which he might secure as salesman for appellant throughout an assigned territory of approximately ninety counties in west Texas. The contract provided, in part, as follows: "The Salesman agrees to take complete charge of his assigned sales territory and to be responsible for its travel coverage in the promotion of the Company's business, and to devote his working time to the Company's interests to the exclusion of all other business, and to abide by the regulations and to follow the directions of the Company's management."

Appellant answered the suit with a general denial, an affirmative plea that appellee had breached the provision in his contract requiring him to devote his working time to the company's interest to the exclusion of all other business, and, in addition to pleading the breach of contract as a complete defense to the asserted cause of action, appellant sought by cross action to recover, or to be given credit for, the lost profits which would have accrued to it under the contract had appellee complied with the same.

The case was submitted to a jury on special issues. In response to such issues the jury found, among other things, that appellee was entitled to a sales commission on the shipment of merchandise made to Texas Western College in the sum of $1,-157.26, and that he was also entitled to recover sales commissions on merchandise shipped in 1951 on orders placed by him with appellant, exclusive of the Texas Western College transaction, in the sum of $5,975.21. The jury also found that appellee did not breach his contract with ap-

pellant, and that appellant was estopped to assert the defense that appellee, while employed by appellant, performed sales services for a person or persons other than the appellant. Based upon the verdict of the jury, the court rendered judgment in favor of appellee for $7,132.47, with interest thereon at the rate of 6% per annum from January 1, 1952.

By points of error 1 to 4 inclusive in its brief, appellant says in effect that the trial court erred in submitting to the jury the issue as to whether appellee breached his contract because the undisputed evidence shows conclusively that he did, and furthermore, that the court erred in refusing to grant it a new trial because the answer of the jury to the effect that appellee did not breach his contract was contrary to the great weight and preponderance of the evidence.

In our opinion, the evidence shows without dispute that appellee failed in certain particulars to abide by his agreement to devote his working time to appellant's interest to the exclusion of all other business, and to follow the directions of appellant's management. The undisputed evidence shows that on June 14, 1950, appellee took an order from the First Methodist Church at Idalou, Texas, for church pews, two pulpits and twenty-four semi-upholstered choir chains, amounting to $3,694. Prior to the termination of his contract, he took an order from the Levelland First Baptist Church for six church pews and a communion table. In September of 1950 he solicited and obtained an order from the Dalhart Christian Church, and he also secured an order from the Broadway Church of Christ of Lubbock, Texas. None of these orders was forwarded to appellant, but they were submitted directly by appellee to C. M. Trautschold Company of Waco, Texas, a concern with which appellant was then and had been doing business. Not only were the foregoing facts shown by the undisputed evidence, but appellee admitted such facts to be true in his own testimony on the trial of the case, and he further admitted that he had made a profit on some, if not all, of these transactions and had

retained the same without communicating any of the facts to appellant relevant thereto. It is true that appellee attempted by his testimony to explain, as stated in his brief, "the circumstances surrounding his sale of equipment for other companies and his pecuniary gain therefrom." But the circumstances surrounding his sale of equipment for other companies and the pecuniary gain resulting to him therefrom, did not show or tend to show that he had complied with his written agreement to devote his working time to appellant's interest to the exclusion of all other business.

■ Since the evidence establishing the foregoing facts was undisputed, the issue of whether appellee breached the contract as alleged by appellant raised a question of law for the court and not a question of fact for the jury, and hence the court erred in submitting such issue to the jury.

■ Under the law applicable to the facts established by the undisputed evidence in this case, it is clear to us that appellee failed to discharge in full the duty which he owed to appellant. As stated in 2 Tex. Jur. pp. 593–594, Sec. 181: "In all cases the principal is entitled to the best effort and unbiased judgment of his agent, and the law, for reasons founded on public policy, forbids the agent's assumption of a relation antagonistic to his duty. The agent may not deal with the subject matter of the agency in such a manner as to injure the principal or to secure a secret or unauthorized benefit to himself." See also: 2 Amer.Jur. pp. 202–203, Secs. 251, 252; 2 Amer.Jur. p. 219, Sec. 273; 3 C.J.S., Agency, § 138, p. 8. However, we do not think appellee's breach of contract in the particulars shown by the evidence in this case necessarily constituted a complete defense against appellee's asserted right to recover commissions accruing on orders secured prior to the termination of the contract of employment and shipped by appellant thereafter. 3 Williston on Contracts, pp. 2359 et seq., Sec. 841. But appellant was entitled as a matter of law to recover, or to be given credit for, the lost profits which would have accrued to it under the

contract if appellee had complied with the same. 10 Tex.Jur., p. 468, Sec. 272; 3 C.J.S., Agency, § 138, p. 8; 4 Williston, p. 2824, Sec. 1022; Parks v. Schoellkopf Co., Tex.Civ.App., 230 S.W. 704; Scott v. Weaver, Tex.Civ.App., 2 S.W.2d 870 (er. dis.).

■ · The trial court was undoubtedly of the opinion that if appellee breached his contract with. appellant, then in that event appellant would be entitled to recover, or to be given credit for, the lost profits which would have accrued to it under the contract had appellee complied with the same, because the·court submitted Special Issue No. 10 to the jury, reading as follows: "What sum of money, if any, do you find from a preponderance of the evidence, represents the loss, if any, to the defendant by virtue of such breach of contract by the plaintiff, if any?" However, under the charge of the court, the jury was not required to answer Special Issue No. 10 if they found that appellee had not breached his contract with appellant, and, having found that appellee had not breached the contract, the jury did not answer Special Issue No. 10. Consequently, appellant has been improperly deprived of its legal right to a determination of the fact issue as to the amount of loss it sustained by virtue of appellee's breach of the contract sued upon, and the error of the court in improperly submitting to the jury the issue as to whether appellee breached his contract requires a reversal of the judgment appealed from unless appellant is estopped from asserting its right to recover such loss.

Under other points in its brief, appellant complains of the action of the trial court in submitting the issue as to whether it was estopped to assert a breach of contract by appellee and in overruling its motion for new trial because the answer of the jury to such issue was contrary to the great weight and preponderance of the evidence. The issue as submitted by the trial court was as follows: "Do you find from a preponderance of the evidence that the defendant is estopped to assert the defense that the plaintiff, while employed by the defend-

ant, performed sales services for a person or persons other than the defendant?" In connection with the submission of such issue the trial court instructed the jury that "in our law is a doctrine whereby a person is prevented from speaking or complaining now, when he should have spoken or complained previously, and if to permit him to speak or complain now would work hardship upon or disadvantage to another." No other instruction was given to the jury in connection with this issue. Appellant timely objected to the submission of the issue to the jury and the explanatory instruction accompanying the same because there was no evidence to support an affirmative finding to such issue, and because the explanatory instruction accompanying the issue was erroneous in many respects as fully set·out in its objections to the court's charge. During the deliberation of the jurors, they sent a written note to the trial judge reading as follows: "May we have a more complete definition of 'estoppel' as used in Special Issue No. XI, please?" To this note the court answered as follows: "The definition as given is as complete as the court can make it." Upon the hearing of appellant's motion for new trial it was shown by the undisputed evidence that after the jury had been advised by the court that the definition of "estoppel" as previously given was as complete as the court could make it, the foreman of the jury then referred to a Webster's Collegiate Dictionary, Fifth Edition, for a more complete definition of the term and thereafter communicated to the other jurors the definition of the term as contained in the dictionary, whereupon the jurors then agreed to answer the estoppel issue in the affirmative.

■ We think the issue of estoppel as raised by the pleading of appellee was not tendered by the evidence in this case and that the trial court erred in submitting such issue to the jury. Appellee's plea of estoppel is based solely upon allegations relating to the transaction with Texas Western College. This transaction occurred in the fall of 1949 and was consummated by D. L. Pillow, a dealer acting for appellant. Ap-

pellee alleged that the failure of appellant to pay him a commission on this transaction constituted a breach of contract on the part of appellant; that appellee thereafter continued working in the employ of appellant as its sales representative, appellant derived benefits from his efforts, and appellant did not indicate that it would fail to honor the sales subsequently made by appellee. Upon these allegations appellee asserted that appellant was estopped to claim a breach of the contract by appellee. The evidence shows that appellee was instructed to see Mr. Pillow in connection with soliciting a contract for the seating of the auditorium of Texas Western College. The evidence further shows that appellee did not see D. L. Pillow and did not proceed promptly to El Paso, as instructed. The evidence also shows that appellant paid D. L. Pillow a commission of $650 to sell this order. Appellee admitted that he did not claim any commission on the Texas Western College transaction until after his contract of employment had been terminated on December 15, 1950, and that he so advised appellant.

But whether the issue of estoppel as raised by the pleading of appellee was or was not tendered by the evidence, it is readily apparent that the issue as submitted, together with the court's explanatory charge relating thereto, was erroneous. Such explanatory charge did not purport to be a definition of estoppel and as a general charge it was wholly inadequate to guide the jury in applying the equitable doctrine of estoppel to the evidence in the case. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, pt. 7.

Appellant also says the trial court erred in refusing to grant its motion for new trial because of jury misconduct in three particulars, including the action of the foreman in referring to a Webster's Collegiate Dictionary for a definition of the term "estoppel", and thereafter communicating to the other jurors the definition of the term as contained in the dictionary. Although the jurors had attempted to secure from the trial court more information

than his charge contained with respect to the meaning of "estoppel", we think their use of Webster's Dictionary in seeking further light as to the meaning of this term constituted misconduct which was prejudicial to the rights of appellant. Corpus Christi St. & Interurban Ry. Co. v. Kjellberg, Tex.Civ.App., 185 S.W. 430; S. Lightburne & Co. v. First Nat. Bank of Rockport, Tex.Civ.App., 232 S.W. 343, 344. In each of the cited opinions we find this language:

"'No book should be consulted by a jury in arriving at a verdict, and especially one that defines and treats on everything expressed by the English language. No maker of dictionaries should ever be allowed to define legal terms to a jury, unless such definitions go through the medium of the trial judge, the only one authorized by law to give definitions and explanations to a jury.'"

We do not deem it necessary to pass upon any of the additional points presented in the brief of appellant. Because of the errors above discussed, the judgment appealed from is reversed and the cause is remanded to the court below for another trial.