C. B. WEATHERS et ux., Appellants,

v.

RENSHAW BROTHERS WELL SERVICING COMPANY and R. L. Williams, Appellees.

No. 15851.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 15, 1957.

Rehearing Denied Dec. 13, 1957.

Grover Sellers, Joe N. Chapman, Sulphur Springs, for appellants.

Kenley, Sharp, Ritter & Boyland and Herbert Boyland, Jr., Longview, for appellees.

RENFRO, Justice.

Suit was brought by C. B. Weathers et ux. against Renshaw Brothers Well Servicing Company and R. L. Williams, its .employee, acting within the scope of .his employment; for damages sustained in a

collision between a pickup driven by Mrs. Weathers and a pickup driven by Williams. On the occasion in question, Mrs. Weathers was driving south on Highway 37 in the City of Winnsboro, and Williams was driving west on Pine Street, with the intention of making a left hand turn south on Highway 37. Highway 37 was 36 feet wide; Pine Street was 27 feet wide. The collision occurred about 6:30 a. m. on November 4, 1954, in the southwest corner of the intersection of the two named streets. The right front of the Williams' pickup and the left front of the Weathers' pickup bore the burden of the impact.

The jury found that Williams failed to yield the right of way, failed to keep a proper lookout, failed to use ordinary care as he drove the pickup into the intersection, and that each of said acts of negligence was a proximate cause. Both parties were exonerated from excessive speed. It was found by the jury in issue 21 that Mrs. Weathers failed to keep a proper lookout on the occasion in question; in issue 23 that she failed to look to her left immediately prior to entering the intersection; and in issue 32 that she was negligent in bringing her pickup to a stop after entering the intersection. Proximate cause was found against her on each of the above findings. The jury found damages for the plaintiffs in the sum of $3,100. From a judgment for the defendants, the plaintiffs have perfected this appeal.

The first three points of error contend the court erred in submitting issues Nos. 21, 23 and 32 on the ground there was no evidence to support the findings.

█ The jury found that the two pickups reached the intersection at approximately the same time. Thus, Mrs. Weathers, being on the right of Williams, was entitled to the right of way. This circumstance, however, did not excuse her from the duty of exercising ordinary care. Kersey v. Swidler, Tex.Civ.App., 223 S.W. 2d 242. Ordinarily, proper lookout is a

question for the jury. Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332. The appellate court must consider that evidence, if any, which viewed in its most favorable light supports the jury's findings. Biggers v. Continental Bus System, Tex., 303 S.W.2d 359.

Defendants offered in evidence a series of photographs taken two years after the collision, which showed the intersection and portions of Pine Street from various distances north on the Highway, and adduced testimony therefrom that a person 25 feet north of the intersection on the Highway could see 40 feet east on Pine Street, and that from 20 feet north of the intersection one could see 75 feet east down Pine Street.

█ Although Mrs. Weathers testified she did keep a proper lookout and looked to the left, the circumstances as disclosed by the record were such that the jury could find she did not so look. Kimbriel Produce Co. v. Webster, Tex.Civ.App., 185 S.W.2d 198. The evidence was such that the jury could have properly believed that she failed to keep a proper lookout and failed to look to the left before entering the intersection. There is also evidence from which the jury could have found that Mrs. Weathers was guilty of negligence in stopping at the intersection. The record was such that the jury could have believed that she could have avoided the accident by continuing on her course, rather than coming to a sudden stop. Her testimony shows that she was driving 15 miles an hour when she saw the defendants' pickup entering the intersection; that she immediately applied her brakes and stopped within 5 feet. There is no evidence of any other vehicular traffic in or near the intersection which might have impeded her movements.

Viewed in the light most favorable to defendants, we think the evidence is sufficient to uphold the jury's findings to the issues of which complaint is made, and

therefore overrule plaintiffs' points of error.

The remaining points of error are based on the action of the trial judge in refusing to grant a new trial because of jury misconduct. The witness Wilks, who was riding with defendant Williams at the time of the collision, testified that because of the high embankment along the north side of Pine Street "neither side can see until they are out practically into the road." Velma Hair testified that because of the high embankment one going south on the Highway cannot see down Pine Street until he is within 25 feet of the intersection; she did not know how far down Pine Street one could see from such distance. Witness Wall testified that south bound traffic "can't see around that bank until you about get there," that one had to be within 2 or 3 feet of the curb line in order to see down Pine Street. Mrs. Weathers testified she saw the reflection of car lights coming up from East Pine and just as she got to the intersection "he came across and hit me as I entered the intersection there." She saw he was not going to stop so she applied her brakes and stopped. She could only see down Pine Street about 15 feet because of the embankment along the north side of Pine Street. She further testified that when one is 5 feet from the intersection, traveling south, only four or five feet of Pine Street are in view. Mr. Weathers testified the high bank has everything blocked, that the crest of the embankment along Pine Street is not far from the corner and you practically have to be even with the street to see Pine Street at all.

Plaintiffs attached the affidavit of Lee Vaughn, foreman of the jury, to their motion for new trial, in which Vaughn swore that after the jury received the court's charge the first twenty issues were answered in order without much difficulty; that when issue No. 21 on proper lookout of Mrs. Weathers was reached, a majority voted on the first ballot that she did not fail to keep a proper lookout; after consider-

able discussion the jury requested that Mrs. Weathers' testimony regarding her looking to her left down Pine Street as she approached the intersection be read to the jury; the next day before final decision was reached to issue 21 the juror Mrs. Miller stated that she was familiar with this intersection, had traveled past it two or three times a week for the past several years and that one approaching the intersection from the north could see down Pine Street from at least 30 or 40 feet before reaching the intersection; that after the above statement was made several times, a majority of the members of the jury changed their vote on said issue from "no" to "yes", in other words, convicted Mrs. Weathers of failing to keep a proper lookout; and thereafter the remaining issues were answered promptly. Juror Vaughn's testimony on the motion for new trial was substantially the same as that set out in his affidavit, except that in his testimony he testified that Mrs. Miller stated that when you got to within about 20 feet of the intersection you could see down Pine Street, and that prior to Mrs. Miller's statement he and some other jurors had voted that Mrs. Weathers kept a proper lookout but that after her statement he and the other jurors who had previously so voted changed their votes so as to convict her of failure to keep a proper lookout.

The court overruled the motion for new trial. His order contained the following: "The Court after hearing the evidence offered on the issue of the misconduct of the jury complained of in the Plaintiffs' Amended Motion for a New Trial, is of the opinion and the Court finds that the facts as related in the affidavit attached to the amended motion for new trial are true, that misconduct occurred and that such misconduct affected the finding of the jury to Issue No. 21 of the Court's charge, * * * but the Court further finds that such misconduct on the part of the jury did not affect the jury's findings and the succeeding issues concerning the failure of the Plain-

tiff Etta W. Weathers to look to the left and her stopping in the intersection."

■ The evidence was sharply conflicting as to whether or not Mrs. Weathers could see approaching traffic on Pine Street before she reached the intersection. As stated above, some witnesses testified that one could not see down Pine Street before being almost on the curb line because of the high embankment along Pine Street. According to pictures introduced by defendants, traffic on Pine Street could be seen before the intersection was reached. The jury could reasonably have believed Mrs. Weathers and her witnesses. Because of the sharp conflict as to visibility from the Highway as traffic approached Pine Street, the unsworn testimony of juror Miller was particularly damaging to plaintiffs. She made of herself an expert witness on the most vital issues in the case. So Mrs. Miller's testimony clearly was misconduct and the Judge was correct in finding that it was such and that it affected the jury's verdict and its answer to issue No. 21.

■ We believe, however, that the Judge erred in holding that the misconduct of juror Miller did not affect the jury's answer to the issue as to whether or not Mrs. Weathers failed to look to her left immediately before entering the intersection. The main issue on proper lookout asked the jury if Mrs. Weathers failed to keep a proper lookout "at the time and on the occasion in question." It seems to us that the one issue was all defendants were entitled to on lookout, but assuming, without deciding, that issue No. 23 regarding her failure to look to the left immediately before entering the intersection was properly given, the two issues are so closely related that jury misconduct resulting in an adverse answer to Mrs. Weathers on issue No. 21 necessarily resulted in an adverse answer to her on No. 23 inquiring as to her failure to look to the left immediately be-

fore entering the intersection. In this connection we call attention to the fact that the jury's request to the court was to have Mrs. Weathers' testimony read to them regarding her looking to her left down Pine Street as she approached the intersection. It was after this request had been complied with that Mrs. Miller made the statements of which complaint is made.

We also think that in all probability the jury was influenced by Mrs. Miller's unsworn statements to answer adversely to plaintiffs on the question of Mrs. Weathers' negligence in stopping in the intersection. If Mrs. Weathers could have seen down Pine Street from the point at which juror Miller told the other jurors she could have seen, then it was but natural that the jury would find that she was guilty of negligence in driving out in front of an approaching vehicle which she could have seen and in bringing her pickup to a stop. On the other hand, if the juror Miller had not made the statements the jury might well have believed the testimony of Mrs. Weathers and her witnesses that her view of Pine Street was blocked and that she could not see the approaching vehicle until she was in the intersection and it was within 15 or 20 feet of her and that it would be the act of an ordinary prudent person to promptly stop in order to avoid a collision.

In other words, as we view the record, all three issues were vitally tied into the question of whether or not Mrs. Weathers could have seen Williams' pickup approaching before she entered the intersection. The undisputed evidence is that Williams entered the intersection and was in the process of making a left hand turn to go in the same direction as Mrs. Weathers at the time of the collision. It seems a logical conclusion that except for juror Miller's statements to the jury it would have believed Mrs. Weathers' testimony that she stopped suddenly to avoid a collision and would have believed that such act was not negligent.

■■ The fact that juror Miller did not say how far down Pine Street one could see from a distance of 20 or 30 or 40 feet north of the intersection did not remove the harmful effect of her testimony to the jury. Crawford v. Detering Co., 150 Tex. 140, 237 S.W.2d 615. The defendants contend the statements made by Mrs. Miller added nothing to evidence properly before the jury. The fact that similar testimony was before the jury does not relieve the record of misconduct of the jury. Cheslick v. Lee Moor Contracting Co., Tex.Civ.App., 70 S.W.2d 222. As said in Western Cottonoil Company v. Arnold, Tex.Civ.App., 279 S. W.2d 374, 377, referring to a juror, "This secret testimony was calculated to impress his fellow jurors more than if he had testified to the same thing from the witness stand. He was not under oath and defendant had no chance to cross examine him or to attempt to refute his testimony." And so should the juror Miller's testimony be regarded in the instant case. Her unsworn testimony was directly pertinent to the issues decided against plaintiffs by the jury.

■■ When misconduct is established the question of injury is one of law for the reviewing court; both the trial and reviewing courts have the right to review the matter in the light of the entire record. By the entire record is meant the evidence heard on the motion presenting misconduct, the evidence on the main trial, and any and all other parts of the record which may throw light on the question of injury. Barrington v. Duncan, 140 Tex. 510, 169 S.W. 2d 462; City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259. Misconduct of the jury having been established and the trial court having found that such misconduct did occur, the question of probable injury is before this court the same as it was before the trial court. From an examination of the entire record, we have concluded that misconduct of the juror was calculated to work an injury to the plaintiffs and that it probably did so. Injury having probably resulted to the plaintiffs, their mo-

tion for new trial should have been granted, and the court erred in not granting said motion.

The judgment of the trial court is reversed and the cause remanded for a new trial.