Florence Goodson DAVIS, a Feme Sole,
Appellant,

v.

John L. DAMGE et ux., Appellees.

No. 13450.

Court of Civil Appeals of Texas.

Houston.

Oct. 1, 1959.

Rehearing Denied Oct. 29, 1959.

Walter C. Clemons, William C. Spence, Houston, for appellant.

Barrow, Bland & Rehmet, Houston, Vincent W. Rehmet, Houston, of counsel, for appellees.

WOODRUFF, Justice.

This is an appeal from an order overruling appellant's motion for new trial alleging jury misconduct.

Appellees, John L. Damge and wife, Mildred, sued appellant, Florence Goodson Davis, a feme sole, to recover damages sustained by them when Mrs. Damge and Mrs. Davis, operating their respective automobiles, were involved in an intersectional collision. Mrs. Davis answered appellees' suit and filed a cross-action against them, seeking a recovery of her damages.

The case was submitted to the jury on 19 Special Issues. By their answers the jury found: (1) that appellant, Mrs. Davis, "failed to keep a proper lookout", (2) which was a proximate cause of the collision; (3) that appellant was operating her car "at a greater rate of speed" etc., (4) which was a proximate cause of the collision; (5) that Mrs. Damge entered the intersection before appellant; (6) that appellant failed to yield the right of way, (7) which was a proximate cause of the event. The jury also found: (8) that appellant was not driving more than 30 miles per hour; (10) neither was Mrs. Damge; (12) Mrs. Damge was not operating her car "at a greater rate of speed" etc., (14) but that she "failed to keep a proper lookout", (15) which was "a proximate cause of the collision" although (16) she did not fail to yield the right of way.

In response to Special Issues Nos. 18 and 19 the jury found that appellees and appellant respectively sustained damages in the sum of $1,000 each. The Court entered judgment denying both parties a recovery. Mrs. Davis filed a motion for new trial, alleging jury misconduct. After hearing, it was overruled, and from that order she has appealed.

Findings of fact and conclusions of law were neither requested nor filed. The statement of facts contains only the testimony of five jurors who testified on the motion for new trial.

Appellant bases her appeal on 3 Points, wherein she asserts that the Trial Court erred in not granting her a new trial because the acts of certain jurors in consulting dictionaries and law books while considering Issues on proximate cause constituted material and prejudicial misconduct and because the jury foreman stated during a consideration of her damage Issue that probably her employer was paying her regular salary during her period of recuperation, which remarks were material and prejudicial to her.

At this late date we deem it wholly unnecessary to do more than to point out that where jury misconduct is relied on as a ground for new trial, Rule 327, Texas Rules of Civil Procedure, since its adoption on September 1, 1941, has been construed to do away with the presumption of prejudice which, under the provisions of Article 2234,

Vernon's Ann.Texas St., 1925, arose from mere proof of jury misconduct, and the burden now rests upon the party asserting such misconduct, not only to prove by a preponderance of the evidence that misconduct occurred, but also of showing that it probably resulted in injury to him. Barrington v. Duncan, 140 Tex. 510, 169 S.W. 2d 462; City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259; Menefee v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 181 S.W.2d 287, ref., w. m.; Watson v. Texas Indemnity Ins. Co., 147 Tex. 40, 210 S.W. 2d 989.

■ It is well settled, too, that under the provisions of Rule 327, T.R.C.P., whether misconduct occurred is a question of fact, but where it is established the question of probable injury is one of law for the Court. Barrington v. Duncan, supra; City of Houston v. Quinones, supra; Menefee v. Gulf, C. & S. F. Ry. Co., supra; Lackey v. Moffett, Tex.Civ.App., 172 S.W. 2d 715; Motley v. Mielsch, 145 Tex. 557, 200 S.W.2d 622.

■ In the instant case no findings of fact or conclusions of law have been filed or requested as the result of the hearing on the motion for new trial. It is, therefore, the duty of an appellate court to presume in support of the Trial Court's ruling that in passing upon the testimony of the jurors as witnesses the trial judge gave it the most favorable construction of which it was susceptible that no such misconduct occurred. Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770; Menefee v. Gulf, C. & S. F. Ry. Co., supra; Galveston, H. & S. A. R. Co. v. Waldo, Tex. Civ.App., 77 S.W.2d 326; Putman v. Lazarus, 156 Tex. 154, 293 S.W.2d 493.

Summarizing the testimony offered on the motion for new trial, it appears that the jury started deliberating about 2:30 p. m. but no verdict was reached until the next afternoon. P. K. Noland was selected as foreman and immediately thereafter he read the entire charge aloud. This took about 30 minutes. The jury then started considering the Issues. Beginning with Special Issue No. 1, after a short discussion, it was answered in the affirmative, that appellant failed to keep a proper lookout. Upon passing to Special Issue No. 2, inquiring as to whether such failure was a proximate cause of the collision, an extended discussion prompted the foreman to ask the Trial Court in writing for a better definition. This was refused with an admonition to the jury to confine the discussion to the charge. Of the five jurors who testified, Mr. Noland, Mrs. Finley and Mr. Kelley said that the first 4 to 7 Special Issues were answered in the affirmative in numerical sequence on the first day before they recessed. Mr. Noland implemented this testimony by saying he had the charge and the answer sheet and the answers were never changed. Their testimony was amply sufficient to support an implied finding by the Trial Court that the first 4 Issues were answered before the jury recessed at approximately 5 o'clock, although Mr. Kendrick testified that the Issues on proximate cause were "skipped" the first day and were "filled in" the second day. The fifth juror, Mr. Overton, did not recall "whether the jury reached a final decision on that particular Issue [proximate cause] that day or not" although he reasoned "the best I recall we answered more than the two questions, so evidently we passed that one up."

The proof showed, however, that both Mr. Kendrick and Mr. Noland, as well as several other jurors who remained unidentified, upon reaching their homes after they had recessed for the day, "looked up" the word "proximate" in a dictionary. Mr. Kendrick, after stating he did, testified that the first thing that was brought up the next morning was the definition of "proximate cause" when Mr. Noland placed on the table a typewritten "meaning" of the word "proximate" which his secretary had typed that morning before he came to the courthouse, and it was passed around to the jurors, the majority of whom said it was

the same definition they had found when they looked up the word the night before.

Mr. Noland, though admitting he had "gone to Webster's Dictionary" the night before, testified he did not think he brought a written definition of the word "proximate" that morning, though he had intended to have one copied because he was "tied up with visitors from the home office" and was trying to get his secretary "lined up" that morning before he came over, and did not think he brought it.

Mrs. Finley testified that she believed that Mr. Noland read a definition the next morning from a piece of paper and then put it in his pocket. Mr. Overton, however, said he did not remember the jury's considering any paper other than the Court's charge. Under this testimony it must be presumed that the Trial Court found in support of his ruling that Mr. Noland did not bring into the jury room a copy of a definition of the word "proximate".

Mr. Overton said that after the jury had recessed, he had consulted two law books on Torts, one of which was by Prosser. From reading them he opined that "many legal minds are confused on the meaning of proximate cause; that it has no clear, precise definition" and that what he read "didn't clarify" what the term meant and didn't help him one way or the other in deciding what proximate cause meant. No proof was offered to show what he actually read in the law books.

Mr. Noland testified that while appellant's damage Issue (Special Issue No. 19) was being considered he said that he, being employed by an oil company, was aware of the policy that an employee, being off under certain conditions, would probably receive her pay from her employer, but that he stated to the jury, "I didn't feel we could consider it. It was just a question of whether there was a loss, not whose loss, but a loss." Mrs. Finley testified that when the question was raised as to whether

Gulf paid Mrs. Davis' salary while she was recovering from her injuries, "We ruled it out," and in that connection Mr. Kendrick testified the foreman said they "weren't supposed to bring anything up outside the trial" and "that wasn't in the trial in reaching the verdict."

Appellant takes the position that she, having shown as a fact that several members of the jury during the overnight recess consulted a dictionary for a definition of the word "proximate" and that another member referred to two law books for the meaning of the term "proximate cause", thereby established as a matter of law that the misconduct was material and probably resulted in injury to her.

In support of that contention, she cites Corpus Christi Street & Interurban R. Co. v. Kjellberg, Tex.Civ.App.1916, 185 S.W. 430; S. Lightburne & Co. v. First National Bank, Tex.Civ.App.1921, 232 S.W. 343; Norris Bros. v. Mattinson, Tex.Civ. App.1938, 118 S.W.2d 460, writ dism.; Figula v. Fort Worth & D. C. R. Co., Tex. Civ.App.1939, 131 S.W.2d 998, writ ref.; Gulf States Equipment Co. v. Toombs, Tex.Civ.App.1956, 288 S.W.2d 203, writ ref., n. r. e. In each of these cases it was held that upon its being shown that dictionaries were consulted by jurors during their deliberations, the complaining party was entitled to a new trial; however, all of these cases except the last were decided under the law applicable to motions for new trial based on jury misconduct as contemplated under the terms of Article 2234, V.A.T.S., 1925, whereby harm was presumed upon misconduct being proven. In our opinion, those holdings are not applicable to this case. However, it must be conceded that in the last proposition discussed in the opinion of Gulf States Equipment Co. v. Toombs, supra, the next above mentioned cases were followed. It will be noted, though, that no mention was made in that opinion of Rule 327, though it was decided in 1956, long after Article 2234, V.A.T.S., 1925, had been superseded by

Rule 327; nor was any mention made of the change in the law that was occasioned by the adoption of such rule. Since the reasoning of that opinion on the other points involved in that suit thoroughly supports that able Court's disposition of the case, we do not feel disposed to follow that opinion on the point before us here, especially in view of the fact that the writ action by the Supreme Court shows that it was refused for want of reversible error.

Appellant also relies on Texas Employers Ins. Ass'n v. McCaslin, Tex.1958, 317 S.W. 2d 916. That case involved an instance in which a litigant improperly communicated with a member of the jury. The Supreme Court held that that overt act of misconduct itself was so highly prejudicial and inimical to fairness of trial that the burden of going forward with proof of probable harm was met, as required by Rule 327, merely by showing the improper act. We perceive no reason in law for applying that rule to the facts of this case. There is nothing incompatible with justice in the act of a juror consulting a dictionary unless specific harm can be demonstrated.

In our opinion, the testimony of the five jurors adduced on the hearing on the motion for new trial, when viewed in the light most favorable to the Trial Court's action in overruling the motion, established that at least the first four Special Issues were answered against the appellant during the deliberations of the jury on the first afternoon and that the answers were never changed.

Moreover, we are of the opinion that it cannot be said as a matter of law that probable injury resulted to appellant if several members of the jury referred to a dictionary for a definition of the word "proximate" during the overnight recess because her recovery was precluded by the findings of the jury theretofore made before any reference had been made to a dictionary. Helton v. Luse & Fosdick Drilling Co., Tex.Civ.App., 147 S.W.2d 831; Triangle Cab Co. v. Taylor, 144 Tex.

568, 192 S.W.2d 143. We are of the opinion that the foregoing warrants an affirmance of this case at this point without further discussion.

Continuing, however, it is our opinion that in the absence of proof of the dictionary definition of the word "proximate" which several jurors said they had read, we are unable to conclude as a matter of law that injury resulted to appellant from a reading thereof by any juror. Appellant has not attempted to demonstrate any such injury, and neither can we agree with appellant's contention that the act of the juror Overton in reading from the two law books, without proof of what he read, was such misconduct as would warrant the conclusion that injury probably resulted therefrom. Here again appellant fails to show any such injury. This is a burden that is cast upon the appellant under the provisions of Rule 327, and it has been held that a trial court is not required to grant a new trial if it has only a reasonable doubt as to whether misconduct affected the verdict. City of Dallas v. Hutchins, Tex.Civ.App., 226 S.W.2d 155, writ ref., n. r. e.; Lackey v. Moffett, Tex. Civ.App., 172 S.W.2d 715.

Neither do we believe it can be said that injury resulted to appellant by reason of Mr. Noland's comment that probably appellant was paid her regular salary by her employer during her period of recuperation, in view of his statements that he did not feel "that they could consider that because they weren't supposed to bring up anything outside the trial" and "the question was whether there was a loss, not whose loss, but a loss," coupled with Mrs. Finley's statement that "we ruled it out." Putman v. Lazarus, supra.

Though the issue has not been directly raised, nor has its consideration been deemed essential to a disposition of this case, we take occasion to direct attention to the principle frequently stated in decisions that in considering the law question

of probable injury after jury misconduct has been established, the courts will examine the matter in the light of the entire record. By the "entire record" is meant the evidence heard on the motion for new trial, the evidence in the main trial and all other parts of the record pertinent to the Issue. City of Houston v. Quinones, supra; Triangle Cab Co. v. Taylor, Tex.Civ.App., 190 S.W.2d 755, affirmed 144 Tex. 568, 192 S.W.2d 143; Abramson v. City of San Angelo, Tex.Civ.App., 210 S.W.2d 476, error dism.; Burkett v. Slauson, Tex.Civ.App., 256 S.W.2d 179, error dism.; Willrodt v. Union City Transfer Co., Tex.Civ.App., 258 S.W.2d 443, ref., n. r. e.; Weathers v. Renshaw Bros. Well Servicing Co., Tex.Civ.App., 307 S.W.2d 640, ref., n. r. e. It thus appears evident that if the "entire record" is not brought before an appellate court, under ordinary circumstances no opportunity for such a review as to warrant a reversal is possible.

The judgment of the Trial Court is, therefore, in all things affirmed.